**Johnny H. SMITH,
Petitioner–Appellant,**

v.

**Ross T. GEARINGER, Warden,
Respondent–Appellee.**

No. 88–8303.

United States Court of Appeals,
Eleventh Circuit.

Nov. 22, 1989.

G. Bertrand Hester, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before KRAVITCH, Circuit Judge, HILL *, Senior Circuit Judge, and FREEMAN **, District Judge.

KRAVITCH, Circuit Judge:

The petitioner, Johnny H. Smith, convicted of murder and sentenced to life imprisonment, appeals from the district court's denial of his petition for habeas corpus relief, alleging that the court erred in failing to hold an evidentiary hearing on his ineffective assistance of counsel claim. Smith claims that he was denied effective assistance of counsel when his trial counsel failed to challenge two jurors for cause, despite Smith's protestations that these jurors were related to the victim and the victim's mother. The district court found that this claim, as well as all other claims that Smith presented in his federal habeas petition, had been fully and fairly disposed of on direct appeal and in two prior state habeas corpus proceedings. It therefore dismissed the habeas petition without holding an evidentiary hearing, finding that Smith had shown insufficient cause to require the court to relitigate his factual claims.

We disagree with the district court's finding that Smith was afforded a full and fair hearing on his ineffective assistance of counsel claim in either of his state habeas corpus proceedings and therefore reverse and remand to the district court.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Richard C. Freeman, U.S. District Judge for the Northern District of Georgia, sitting by designation.

## I. FACTS

Smith was convicted by a jury for the murder of his girlfriend, Mildred Raymond. According to trial testimony, Raymond had entered a house in Georgetown to borrow one dollar from Smith. At that time the victim and Smith were having problems with their relationship because he thought she was seeing another man. As the victim left the house, Smith asked her to stay with him. The victim declined the request and continued her walk with her cousin down Bourbon Street. Smith began following the two women in his car. He asked the victim a number of times to get in his car. She refused. Smith finally parked his car and forced the victim into his car. At some point, he picked up a pistol and turned it toward the victim. Smith testified that the victim bumped his hand as he attempted to keep her from opening the passenger door, causing the gun to fire. A bullet entered the victim's skull causing her death.[1]

Smith claimed that the shooting was an accident, citing as evidence the fact that he drove the victim to the hospital and waited in the Emergency Room after arriving there. The jury found Smith guilty of murder, and the judge sentenced him to life imprisonment. The Georgia Supreme Court affirmed his conviction on direct appeal. *Smith v. State*, 253 Ga. 476, 322 S.E.2d 58 (1984).

## II. COLLATERAL PROCEEDINGS

Smith, proceeding pro se, filed a state habeas corpus petition in the Superior Court of Dodge County in March of 1986. In that petition, Smith alleged, among other things, that:

Petitioner's Right to an impartial Jury as Guaranteed by Georgia Constitution ... and by the sixth and fourteenth amend-

---

1. This statement of facts is taken from *Smith v. State*, 253 Ga. 476, 322 S.E.2d 58, 58–59 (1984).

ment to the United States Constitution, was violated by the trial Court.

Petitioner Contends that He was prejudiced in this effect, whereas, the Trial Court failed to disqualify a potential juror for cause during the jury voir dire examination. Petitioner further contends that said juror was within the prohibited degree of relation by blood to prosecuting witness, wherefore, said juror should have been disqualified for cause.

Smith also included an ineffective assistance of counsel claim in that petition, although he did not link his claim regarding the composition of the jury to counsel's deficient performance.

At the hearing on Smith's first state habeas petition, Smith, proceeding pro se, stated as follows:

My first allegation is where I contend that the trial court denied me a full and fair trial when it failed to disqualify two jurors for cause when it was learned the two jurors were related to the victim and the prosecution witness. Now the first witness, your Honor, was Mr. Woodrow Scott. From my research and from what I've learned, you know, from growing up and whatnot, that Mr. Woodrow Scott was a third cousin to the victim and to the State's witness, the State witness being Louise Williams. Also another juror Lena Shepherd, she was related within the third degree to the victim and the State witness Louise Williams.

Later in the hearing, the court asked Smith what proof he had of this claim. Smith responded as follows:

I have no documented proof 'cause the only proof that I could have had was my mother could have got this information for me, but at that time of filing my mother taken sick and since then she has passed and I have no way of obtaining this information.

The State did not present any evidence to rebut Smith's testimony. It did, however, enter an affidavit of Smith's trial counsel into evidence. The affidavit is a general response to the ineffective assistance of counsel claim raised in the petition and makes no mention of counsel's actions at the voir dire.

The court continued the hearing in order to allow the State time to tender relevant portions of the trial transcript. At the continuation of the hearing, the State tendered pages 4, 5, and 6 of the trial transcript to the court, stating that:

[The pages were] tendered to show the manner in which the jury was polled, although individual questions and answers to the jury were not reflected it was reflected the standard voir dire questions were asked. This goes to his contention concerning various problems with the jury selection.

Smith did not testify at this time.

The court entered an order denying habeas corpus relief. In its findings of fact, the court stated that "[t]he petitioner failed to present any evidence to substantiate that a juror was improperly related to a prosecution witness to an improper degree." As a conclusion of law, the court found that:

The petitioner has the burden of proving that his constitutional rights were violated in that a juror who was improperly related to a prosecution witness was not striken [sic] for cause in the Trial Court. The petitioner failed to carry his burden of proof in regard to this allegation, and this court finds that there was no juror who was improperly not striken [sic] by the trial court.

Smith filed a second pro se habeas petition in the Superior Court of Dodge County in July of 1987.[2] In this petition, Smith stated that:

Defendant received inadequate and ineffective assistance of counsel in that counsel failed, as requested by the defendant

---

**2.** In March of 1987, Smith filed a petition in federal district court raising some of the grounds that he raised in his first state petition as well as new grounds. Finding that Smith failed to exhaust available state remedies in a

portion of his petition, the district court dismissed it under the principles of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

to strike for cause two jurors who was [sic] related within the third degree to the victim. . . .

At a hearing in August of 1987, Smith apparently offered to have his grandmother testify that Woodrow Scott, foreman of the jury, and Lena Mae Shepherd, a juror, were related to the victim and the victim's mother. The court, however, refused to hear the witness, finding that Smith had been afforded an adequate opportunity to present witnesses at the first hearing.[3] The court entered an order in which it found that all issues that Smith raised had either been decided adversely to him in his prior habeas corpus petition or on direct appeal and that those not raised in the original petition would be deemed waived.

Smith then filed a pro se petition for habeas corpus relief in the federal district court, including, among other claims, the claim of ineffective assistance of counsel as presented to the state court in his second habeas petition. The district court, finding that Smith's claims had been fully and fairly litigated on direct appeal and at the state habeas hearings, denied relief.

## III. DISCUSSION

The sole issue on appeal is whether Smith should have been afforded an evidentiary hearing on his claim that counsel's failure to strike jurors allegedly related to the victim constituted ineffective assistance of counsel within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

It is undisputed that Smith raised an ineffective assistance of counsel claim on the precise ground presently before us at least once if not twice[4] in his state habeas corpus proceedings. When a state hearing has taken place and judgment has been rendered on a habeas corpus claim, the burden is on the petitioner to show the need for an evidentiary hearing in district court. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.1984) (en banc). In deciding whether a hearing is necessary, a court must make the threshold determination of whether the petitioner's allegations, if proven in such a hearing, would establish the right to habeas corpus relief. *Id.* (citing *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, 782 (1963)).

### A. Ineffective Assistance of Counsel

■ Smith claims that he was denied effective assistance of counsel when his trial counsel failed to challenge for cause two jurors who were impermissibly related to the victim or the victim's mother. Georgia law disqualifies as trial jurors any persons "related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law." O.C.G.A. 15–12–135(a).[5] In determining whether counsel's failure to challenge jurors amounts to ineffective assistance of counsel, we must assume that the jurors were in fact disqualifiable under O.C.G.A. 15–12–135(a).

Smith's ineffective assistance of counsel claim must be evaluated under the familiar two-prong test of *Strickland v. Washing-*

---

**3.** Although the transcript of the August 11, 1987 hearing is not before this court, the parties agree that at the second hearing, in response to questioning by the Court, Smith stated:

And I had no way of proving at that time [the prior habeas proceeding]. Like I said, I did allege relatives being on the jury in the prohibitive degree by law and today I brought in some witnesses to testify to that effect which couldn't get them last year [sic]. My grandmother is back here, she knows about this relationship.

Appellee's Brief at 9–10. At oral argument before this panel, in response to a question from the bench as to why Smith had not presented his grandmother at the first state habeas proceeding, counsel stated that his own investiga-

tions had revealed that Smith's grandmother had moved to New Jersey.

**4.** In his first state petition, Smith presented his claim as one going to the impartiality of the jury and not to the performance of counsel.

**5.** Under Georgia law, "the civil law degree of kinship is ascertained by counting from the juror to the common ancestor to the interested party. . . . [T]he correct method of computation is to count the 'steps' or generations from one ancestor to the next counting each 'step' or generation as one degree, and not to count each ancestor as a degree. If the sum is within the sixth degree, the juror is disqualified to serve in the matter." *Eaton v. Grindle*, 236 Ga. 324, 223 S.E.2d 670, 671 (1976).

*ton*, 466 U.S. 668, 104 S.Ct. 2052. First, Smith "must show that counsel's performance was deficient," *id.* at 687, 104 S.Ct. at 2064, in that counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Second, Smith must show that "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. To demonstrate prejudice, Smith must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In the instant case, the question of the reasonableness of counsel's performance at the voir dire is bound up with the question of whether an evidentiary hearing should be held on Smith's claim, for it is difficult to evaluate counsel's performance without knowing what transpired at the voir dire.

Although the boilerplate language of the transcript indicates that the "statutory voir dire questions were propounded" and that the panel was "purged as to relationship by blood or marriage to ... Thelma Thornton ... or to Mildred Raymond," the voir dire questions and answers are not transcribed.[6] Thus it remains unclear whether each of the jurors in fact stated that he or she was not within a relationship prohibited by the statute or if Smith informed counsel in private that there was some sort of relationship.[7]

Assuming that trial counsel knew or had reason to know that the jury was composed in part of persons disqualifiable under Georgia law, and had no reasonable basis for failing to strike these jurors, we find that counsel's performance at the voir dire would fall outside the range of professionally competent assistance.

If Smith succeeds in showing deficient performance of counsel, he must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In order to satisfy the prejudice prong of the *Strickland* test, it may be sufficient for Smith to show that the jury that found him guilty of murder was composed in part of persons related to the victim. Under Georgia law, it appears that a new trial may be had if a verdict was rendered by a jury including persons disqualified under the Georgia statute. *Tatum v. State*, 206 Ga. 171, 56 S.E.2d 518, 522 (1949). Presumably, this is because such jurors can be expected to sympathize with the victim and influence the other jurors against the defendant. However, the Georgia Supreme Court has also held that the state may rebut this presumption of partiality by showing that the disqualifiable juror was in fact fair and impartial.[8] Following Georgia law, we find that the presence on the jury of a juror who is related to the victim or the victim's mother

---

6. The trial transcript contains the following information relating to the voir dire, repeated verbatim for each of the four panels of jurors called to the jury box:

   First panel of jurors called to the jury box. Jurors oath was administered to the panel by the judge. Each juror was asked to stand, repeat his or her name; state where he or she live; occupation; name of employer; name of spouse, if married; and his or her occupation. First panel of jurors purged as to relationship by blood or marriage to the defendant, Johnny H. Smith; or to Thelma Thornton, the prosecutor in the case; or to Mildred Raymond, the deceased victim. Statutory voir dire questions propounded to the panel. Further voir dire questions propounded to the panel by the district attorney and Mr. Peter Zack Geer. (Tr. 4, 5, 6).

7. In his brief before the district court, Smith claimed that jurors Lena Mae Shepherd and

Woodrow Scott actually stated that they were related to the deceased as well as to the mother of the deceased. At oral argument, counsel for the state indicated that it was her understanding that all those who admitted that they were related were purged from the jury. This suggests that all jurors selected had answered questions regarding their relationship to interested parties in the negative and that Smith informed his trial counsel of the relationship in private.

8. In *Gribble v. State*, 248 Ga. 567, 284 S.E.2d 277, 280 (1981), the appellant, convicted of murder, presented two affidavits stating that a juror and the victim shared the same great grandfather. The Georgia Supreme Court upheld the trial judge's denial of the appellant's motion for a new trial as "[t]he juror, however, averred that she was fair and impartial, and that 'to the best of [her] knowledge no relationship exists between [her] and the murder victim....'"

could well operate to tip the verdict in a way that harms the defendant. This would amount to prejudice within the meaning of *Strickland.* However, the state may rebut this presumption of prejudice by presenting evidence of the juror's impartiality.

We stress that Smith is not claiming nor do we find a constitutional right to a jury composed in accordance with Georgia law. Indeed, since Smith apparently knew of the prohibited relationship at the time of trial, he may well be prevented from raising the claim of a sixth amendment deprivation of right to trial by a fair and impartial jury in the state system; Georgia courts have held that even if a juror is disqualifiable, a defendant must show that neither he nor his counsel knew or should have known of the disqualification before the verdict. *Brindle v. State,* 162 Ga.App. 388, 291 S.E.2d 448, 449 (1982). Because Smith only raised a claim of ineffective assistance, however, we are not presented with the question of whether any other constitutional rights Smith may have would be violated if he were tried by a jury containing jurors related to the victim.

B. *Smith's Right to an Evidentiary Hearing*

■ Having decided that Smith may have a valid ineffective assistance of counsel claim if he proved the facts alleged in his petition,[9] we must now determine whether Smith is entitled to an evidentiary hearing on his claim. In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court clarified the circumstances in which an evidentiary hearing is required on a habeas petition in federal court. It stated that:

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the facts.

*Id.* at 312–13, 83 S.Ct. at 757. The *Townsend* Court then detailed six circumstances in which a federal court must grant an evidentiary hearing.[10] The fifth circumstance is when "the material facts were not adequately developed at the state-court hearing."[11] *Id.* We find that Smith has made the necessary showing under this circumstance to warrant an evidentiary hearing.

There are two sets of facts relating to Smith's ineffective assistance of counsel claim, both of which are material and neither one of which was adequately developed in the state court hearing. The first set of facts goes to the question of whether any of the jurors was in fact impermissibly related to the victim or the victim's mother. The other set goes to the performance of counsel at the voir dire. The first set of facts has bearing on the second. If none of the jurors falls within a prohibited relationship, then counsel cannot be faulted for not striking them and Smith's ineffective assistance of counsel claim fails. If, how-

---

9. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir.1984) (en banc) appears to require the reviewing court to make a definitive determination as to petitioner's right to relief under the facts alleged. In cases such as the instant one, however, where petitioner is proceeding pro se and the facts alleged are themselves extremely unclear, the reviewing court may only be able to state that petitioner "may" have a right to relief under a certain set of possible facts.

10. The circumstances listed in *Townsend* were largely codified when section (d) was added to 28 U.S.C. § 2254 in 1966. Under 28 U.S.C. § 2254(d) "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction" is presumed to

be correct. However, a petitioner may rebut this presumption by showing, among other things, "(3) that the material facts were not adequately developed at the State court hearing; ... [or] (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding." 28 U.S.C. § 2254(d)(3)(6).

11. The nondevelopment of evidence crucial to adequate consideration of the constitutional claim must not be attributable to the "inexcusable neglect of the petitioner." *Townsend,* 372 U.S. at 317, 83 S.Ct. at 759, citing to *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848. Here, there is no evidence in the record that Smith's failure to develop evidence was due to any strategic or tactical maneuvers on his own part.

ever, the jurors do fall within a prohibited relationship and trial counsel knew or should have known of this fact, then the court must undertake the two step analysis mandated by *Strickland v. Washington* to determine whether counsel's performance was deficient and whether that deficient performance prejudiced the defendant.

In the instant case, petitioner was not accorded the opportunity to demonstrate that a relationship existed between certain jurors and the victim. At the first state habeas hearing, the petitioner himself asserted that a relationship existed, but then stated that he had no "documented proof" of that fact. It is clear from a reading of the transcript that petitioner assumed that his own testimony did not constitute evidence of the relationship, since he explained that his mother, the witness who could substantiate his claim, had recently died. At the continuation of the first habeas hearing, the State tendered a portion of the trial transcript which contained a summary of the voir dire. As we have noted, the summary did not indicate the questions asked on voir dire or the answers obtained, but simply stated that the jury had been purged as to relationship by blood or marriage.[12]

The state court's holding that Smith had failed to support his claim was apparently based on the fact that Smith did not present witnesses who could support his allegations. The court apparently chose to disbelieve Smith's own testimony that a relationship existed, although the State failed to offer evidence to rebut that testimony. When Smith attempted to present his grandmother as a witness at the hearing on his second state habeas petition, the court disallowed her testimony. As a result, material facts were not adequately developed at the state court hearings, resulting in a denial of a full and fair hearing in state court.[13] As noted in Section III.A.

above, the facts relating to counsel's performance at the voir dire were also inadequately developed at the state hearing.

Smith represented himself pro se in both state habeas proceedings and filed his briefs pro se in district court. He obtained counsel for his collateral proceedings shortly before briefs were due on this appeal. It is clear from a review of the state habeas hearing at which Smith first alleged that a relationship existed between jurors and the victim that Smith, as a pro se litigant, simply did not know how to properly present his case. As a result, the facts necessary to determine the merits of his claim have never been put before any court. We therefore REVERSE and REMAND to the district court for further proceedings in accordance with this opinion.

---

**12.** See note 6 *supra.*

**13.** It is unclear why the trial court found that "petitioner failed to present any evidence" to substantiate his claim of an improper relationship. Smith himself testified that he knew of the relationship "from growing up and whatnot." While this clearly did not amount to

documented proof, it may have been sufficient to put the burden on the State to show that no relationship existed. It is difficult to see how Smith, incarcerated and proceeding pro se, would have been able to obtain documentary proof of the alleged relationship.