Michael Edward VANSICKEL,
Petitioner–Appellant,

v.

Theo WHITE, Warden, Respondent–
Appellee.

No. 97–17143.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1998.

Decided Jan. 27, 1999.

Connie Marie Alvarez, Federal Public Defender, Sacramento, California, for petitioner-appellant.

Patrick J. Whalen, Deputy Attorney General, Sacramento, California, for respondent-appellee.

Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.

Opinion by Judge THOMPSON; Dissent by Judge REINHARDT.

DAVID R. THOMPSON, Circuit Judge:

Michael Edward Vansickel appeals the judgment of the district court denying his habeas petition under 28 U.S.C. § 2254. Vansickel was tried and convicted of first degree murder with the special circumstance of lying in wait. During jury selection, he was erroneously denied half of his peremptory challenges, but he failed to contemporaneously object.

This case presents the question whether the erroneous denial of peremptory challenges provided for by state statute violates a defendant's due process rights under the United States Constitution. It also presents the question whether, if a federal constitutional violation occurs in this circumstance, automatic reversal of the defendant's state court conviction is required, or whether, when the defendant has procedurally defaulted on his federal constitutional claim in state court, he must establish cause and prejudice for the default.

We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm the district court's denial of the writ. We hold that Vansickel's constitutional rights were violated because he did not receive the full complement of peremptory challenges he was entitled to under California law. However, Vansickel procedurally defaulted his claim in state court and this bars federal habeas review unless he can demonstrate both cause and prejudice, which he cannot.

I

BACKGROUND

Vansickel and Mark Howard, the victim, were in a car that crashed into a drainage ditch in Corning, California. When the police arrived they found Howard in the car; he had been shot in the head at close range by a .22 caliber revolver.

A resident saw Vansickel running across a nearby lawn and heard him say that his friend had been shot, he did not do it, and not to call the police. When the police arrived, they found Vansickel lying in a driveway. As they approached, Vansickel told them that he had the murder weapon. He then displayed a gun, a Ruger .22–caliber revolver, wrapped in a blood-soaked shirt. The officers took cover and ordered Vansickel to drop the gun. Vansickel fired a shot and then dropped the gun and surrendered. He had broken his hip during the car accident and was taken to a hospital.

When Vansickel was questioned at the hospital, he claimed that a third person, Dan, had been in the car and had shot Howard. However, Vansickel later told his former girlfriend that he had "put two rounds into Mark [Howard]" and he had made up the story about Dan. Vansickel further discredited his claims of innocence by sending letters from jail that were admitted into evidence at trial. In one of the letters, Vansickel stated: "I think I fucked up by telling them that there was one more person in the car and that he shot Mark. I gave them a fony [sic] description an [sic] what he was wearing." Later in the same letter, he wrote, "I had to say some[thing] to the cops so I made up this Dan...." At trial Vansickel conceded he had shot Howard.

Following his conviction, Vansickel filed a motion for a new trial because during jury selection he was denied half of his peremptory challenges. Under California Code of

Civil Procedure § 231, a criminal defendant who is on trial for an offense where the penalty is death or life imprisonment is entitled to twenty peremptory challenges.[1] Vansickel was only allowed ten peremptories.

The state court judge had discussed jury selection with counsel at a pretrial conference. Recollections of what transpired at the conference conflict, however it is clear that both the court and defense counsel agreed that the defense was entitled to ten peremptories. The judge recalled that defense counsel stated it was his understanding he was entitled to ten peremptories and the court agreed. Defense counsel recalled that he asked the court how many peremptories he was entitled to, and the court said ten. The prosecuting attorney remained silent.

During jury selection, Vansickel exercised the ten peremptory challenges. After Vansickel's tenth challenge, the court stated, "I think we have a jury, Counsel." Both the prosecutor and the defense agreed.

After the verdict, but prior to sentencing, the court realized it had erroneously denied Vansickel his full allotment of peremptory challenges. The court immediately contacted the prosecutor and defense counsel and revealed the error.

Vansickel then moved for a new trial and presented evidence that he had been dissatisfied with the composition of the jury. Vansickel argued he would have used the additional peremptory challenges. In support of this argument, defense counsel presented a jury chart which had an asterisk next to juror number two, Mr. Frank. Defense counsel argued that he would have challenged Mr. Frank, who was a pharmacist, because Vansickel tested positive for illegal drug use after the murder, and defense counsel did not want a pharmacist on the jury. Further, defense counsel argued he would have used two more peremptory challenges to try to put on the jury two other potential jurors from the jury pool who he felt would be more sympathetic to the defense.

The trial court denied the motion for a new trial. The court reasoned that because defense counsel failed to make a contemporaneous objection to the loss of peremptory challenges, the court could only grant the motion if Vansickel demonstrated prejudice. The court found no prejudice. The court stated it could see no logic in defense counsel's argument that because juror number two, Mr. Frank, was a pharmacist he would have a strong feeling about someone with drugs in their system. Further, Vansickel's use of illegal drugs was not a major part of the case. The court dismissed as "the merest speculation" defense counsel's argument that he would have used peremptories to try to put two other persons on the jury. The court stated that if these two potential jurors had been drawn and on voir dire they turned out to be as favorable to the defense as defense counsel claimed, the prosecution most likely would have used its peremptories to strike them.

The California Court of Appeal affirmed the trial court. It determined that Vansickel's failure to timely object required that he demonstrate prejudice. The standard for prejudice under California law is miscarriage of justice. The Court of Appeal held that Vansickel could not demonstrate prejudice for essentially the same reasons relied on by the trial court. It concluded that Mr. Franks's occupation as a pharmacist was not prejudicial because drugs were not a significant part of the case and Vansickel did not present any evidence that drugs affected his mental state at the time of the murder. Further, it was mere speculation that the two prospective jurors Vansickel wanted to put on the jury would ever have been sworn. Finally, the appellate court concluded that the overwhelming evidence against Vansickel supported the conclusion that no miscarriage of justice occurred. The California Supreme Court denied review. Vansickel then filed state habeas petitions in the California Court of Appeal and in the California Supreme Court. Both courts denied the petitions. He then filed his federal habeas petition in the district court.

---

**1.** Section 231(a) reads: "In criminal cases, if the offense charged is punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to 20 and the people 20 peremptory challenges." Cal.Civ.Proc.Code § 231(a) (West 1997).

The district court determined that the trial court's improper denial of peremptory challenges violated Vansickel's due process rights. However, the court concluded that the claim was procedurally barred because Vansickel failed to make a timely objection in state court. Therefore Vansickel had to demonstrate cause and prejudice. The district court concluded that defense counsel's failure to object to a limit of ten peremptories did not establish cause, and that Vansickel could not establish prejudice because there was no basis to infer that the result of Vansickel's trial would have been different had he been given his full complement of peremptory challenges.[2]

## A. Due Process Violation

The first issue we address is whether denial of peremptory challenges provided for by a state statute violates a state criminal defendant's federal constitutional rights.

The Supreme Court has stated that "peremptory challenges are not of constitutional dimension." *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). In *Ross*, the Court held that the erroneous denial of a challenge for cause that required defense counsel to use a peremptory challenge did not violate the Sixth Amendment. The Court concluded that peremptory challenges are a creature of statute, not required by the Constitution, and "[a]s such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.* at 89, 108 S.Ct. 2273.

In *United States v. Martinez–Salazar*, 146 F.3d 653 (9th Cir.1998), we held that *Ross* did not foreclose a Fifth Amendment challenge to a wrongful denial of a peremptory challenge. *Id.* at 657–58. There, we concluded that the erroneous denial of peremptory challenges provided for by federal law violated a defendant's Fifth Amendment right to due process in a federal prosecution. *Id.* at 658. We distinguished our holding from earlier decisions of this court that con-

cluded the impairment of a defendant's use of peremptory challenges did not constitute a due process violation. *See Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir.1994); *United States v. Baker*, 10 F.3d 1374 (9th Cir.1993). These cases are instructive.

In *Baker*, the defendants alleged their Fifth Amendment due process rights were violated by the district court's refusal to ask supplemental voir dire questions to probe prospective jurors for bias. *Baker*, 10 F.3d at 1403–04. The defense used peremptory challenges to excuse three jurors that it argued should have been excused for cause. However, the defendants' due process rights were not violated because they were provided more than the required allotment of peremptory challenges and they did not exhaust them. *Id.* at 1404.

In *Siripongs*, the petitioner argued that the trial court applied the wrong standard during voir dire to determine "death prone" jurors. *Siripongs*, 35 F.3d at 1322. We stated that it was "immaterial" that petitioner had to use peremptory challenges to excuse jurors that the trial court should have excused for cause because the petitioner did not exhaust all of his peremptory challenges. *Id.* at 1322. We also stated: "Moreover, the loss of peremptory challenges is not a due process violation." *Id.*

In *Martinez–Salazar*, we distinguished *Siripongs* stating: "Siripongs cannot stand for the proposition that the loss of a peremptory challenge never violates due process because Ross and Baker make clear that some such losses do indeed violate due process." *Martinez–Salazar*, 146 F.3d at 658. The petitioner in *Siripongs* "could suffer no due process violation because he did not exhaust all of his peremptory challenges and hence his right was not 'denied or impaired' in any way." *Id.* Further, Siripongs alleged a Sixth Amendment violation, not a violation of his due process rights under the Fifth Amendment. *Id.*

We concluded in *Martinez–Salazar* that the erroneous denial of peremptory chal-

---

**2.** The district court relied upon a report and recommendation from the magistrate judge. The court agreed with the magistrate judge's determination that there was a due process violation and procedural default, but disagreed with the magistrate judge's conclusion that there was cause and prejudice to overcome the procedural bar.

lenges can constitute a due process violation under the Fifth Amendment. Because the due process requirement of the Fifth Amendment is incorporated into the Fourteenth Amendment, the first question we confront in this state habeas case is whether the erroneous denial of peremptory challenges provided for by California law violated Vansickel's due process rights under the Fourteenth Amendment.

 California Code of Civil Procedure § 231 creates a statutory right to twenty peremptory challenges when a defendant faces a sentence of death or life imprisonment. Vansickel was entitled to twenty peremptory challenges and he only received ten. This state right to peremptory challenges is a state-created liberty interest protected by the Fourteenth Amendment to the Constitution. "[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state." *Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir.1993); *see also Moran v. Godinez*, 57 F.3d 690, 698 (9th Cir.1994) ("the denial or misapplication of state procedures that results in the deprivation of a substantive right will implicate a federally recognized liberty interest.").

Applying these principles, we conclude that Vansickel's federal constitutional rights were violated. *See Martinez–Salazar*, 146 F.3d at 658 ("[D]ue process would be violated if a trial court permitted a defendant to exercise fewer than the number of peremptory challenges authorized by law."); *Hines v. Enomoto*, 658 F.2d 667 (9th Cir.1981) (holding denial of half of the peremptory challenges authorized by statute violates a defendant's due process rights).[3]

Vansickel, however, failed to timely object to the denial of his statutory allotment of peremptories in state court. By failing to object, he procedurally defaulted on the federal constitutional claim he raises in this habeas proceeding.

## B. *Procedural Default*

 Federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In order to preclude federal review, a state court must have relied on a procedural bar as the basis for its disposition of the case. *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. 1038.

To determine whether Vansickel's claim was procedurally barred, we look to the California Court of Appeal's opinion because it is the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). The California Court of Appeal found that defense counsel failed to contemporaneously object, and as a result Vansickel had to establish prejudice. The court cited to California law that an error in limiting peremptory challenges, if timely and properly raised, is reversible per se. *See People v. Yates*, 34 Cal.3d 644, 654, 669 P.2d 1, 194 Cal.Rptr. 765 (1983). However, where a defendant fails to timely object, his conviction will not be reversed unless he demonstrates prejudice. *See People v. Caro*, 46 Cal.3d 1035, 1046–47, 761 P.2d 680, 251 Cal.Rptr. 757 (1988). The California Court of Appeal applied the prejudice standard of miscarriage of justice under California law, and determined that Vansickel could not establish prejudice.

Because the California court found Vansickel's claim procedurally barred under state law, to obtain habeas relief under feder-

---

**3.** *Hines* was decided prior to the Supreme Court's decision in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) which held that the Sixth Amendment does not provide any constitutional right to peremptory challenges. In *Hines,* the court assumed that the defendant's due process rights would be violated because denial of peremptory challenges would violate the Sixth Amendment.

al law he must demonstrate cause and prejudice.

## C. Cause and Prejudice

██ If a claim is procedurally barred by an adequate and independent state ground, as it is in the present case, in appropriate circumstances a federal court may still review the merits of the defaulted claim. "The doctrine of procedural default is based on comity, not jurisdiction, and the federal courts retain the power to consider the merits of procedurally defaulted claims." *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992). Federal habeas review is barred, however, unless the habeas prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

### 1. Cause

██ The existence of cause for a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986). Ineffective assistance of counsel is cause for procedural default, but "[a]ttorney error short of ineffective assistance of counsel does not constitute cause." *Id.* at 492.

We are presented with a rather unusual instance of claimed ineffective assistance because both the prosecutor and the court shared in defense counsel's error. Nevertheless, Vansickel argues that his counsel's ignorance of the law and resulting failure to object to the loss of half of his allotted peremptory challenges constitutes ineffective assistance.

██ Attorney inadvertence or ignorance of the law does not establish cause for a procedural default. *Murray*, 477 U.S. at 486–87, 106 S.Ct. 2639; *Correll v. Stewart*, 137 F.3d 1404, 1416 (9th Cir.1998) ("The mere ignorance or inadvertence of [defense] counsel does not furnish sufficient cause to excuse

procedural default."); *but cf. Garrison v. McCarthy*, 653 F.2d 374, 378 (9th Cir.1981) (stating that "in cases of attorney inadvertence or ignorance, a lesser showing of incompetency of counsel should be sufficient for 'cause.' ").

In the present case, it appears defense counsel's ignorance of the law probably would not constitute cause to excuse the procedural default. But even if it would, we hold that Vansickel cannot establish prejudice because there is no reasonable probability that but for counsel's error, the result of the trial would have been different. *See White v. Lewis*, 874 F.2d 599, 604 (9th Cir. 1989).

### 2. Prejudice

██ Vansickel asks us to apply the prejudice standard set forth in *Hines v. Enomoto*, 658 F.2d 667 (9th Cir.1981). Hines was denied half of his allotted peremptory challenges because his attorney failed to recognize that Hines was entitled to twenty-six peremptories rather than the normal thirteen. *Id.* at 671. On habeas review, Hines's claim was procedurally barred because his counsel failed to object in state court. *Id.* at 673. We applied a cause and prejudice analysis to Hines's claim. We held that in order to establish prejudice, he had to "demonstrate that his state trial counsel would have challenged another juror or jurors had he been aware of the remaining challenges." *Id.* at 674.

If we were to measure prejudice under the *Hines* standard, Vansickel would indeed be able to demonstrate prejudice. Defense counsel had placed an asterisk next to Juror Franks's name and the trial court was persuaded that he would have challenged Franks if he had been aware of the remaining challenges. However, *Hines* was decided in 1981 prior to the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Strickland* held that to establish prejudice, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We also consider whether "the result of the proceedings was fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Vansickel has not demonstrated that if he had been allowed to use additional peremptories to strike Juror Franks or to attempt to put two other persons from the jury pool on the jury, the outcome of his case would have been different. The evidence against Vansickel was overwhelming. He was found at the murder scene with the murder weapon in his hand. He admitted to his former girlfriend that he had shot Howard. In the letters he wrote in jail, he stated that he fabricated the story about Dan. Further, at trial he conceded that he had, in fact, shot Howard.[4] There is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

In sum, Vansickel failed to demonstrate that the denial of peremptory challenges "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 619, 113 S.Ct. 1710.

### D. *Automatic Reversal*

We distinguish this case from our recent opinions holding that erroneous denial of a peremptory challenge requires automatic reversal. *See Martinez–Salazar,* 146 F.3d 653; *United States v. Annigoni,* 96 F.3d 1132 (9th Cir.1996). Both *Martinez–Salazar* and *Annigoni* are direct federal appeal cases in which the defendants timely objected in the district court to the erroneous limitation of their peremptory challenges.

In *Annigoni,* the district court erroneously refused to allow Annigoni to use one of his peremptory challenges to strike a potential juror. *Annigoni,* 96 F.3d at 1136. We held that the erroneous denial of a criminal defendant's right of peremptory challenge in a

federal trial requires automatic reversal. *Id.* at 1134.

In *Martinez–Salazar,* the defendant was forced to use one of his peremptory challenges to strike a juror after the court erroneously refused to strike the juror for cause. 146 F.3d at 655. In accordance with *Annigoni,* we held that the error required automatic reversal. *Id.* at 659. *See also United States v. Turner,* 558 F.2d 535, 538 (9th Cir.1977) (holding that the denial of peremptory challenges requires automatic reversal without a showing of prejudice).

Unlike *Annigoni, Martinez–Salazar,* and *Turner,* Vansickel's case is not a direct federal ·appeal where we review the error after a contemporaneous objection has been made. Vansickel is before us on habeas review of his state court conviction after he failed to make a timely objection to the error in state court. The applicable analysis for this state court procedural default is cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Applying this analysis, we conclude Vansickel failed to establish prejudice.

### II

### CONCLUSION

Although we hold that Vansickel's federal due process rights were violated by the erroneous denial of half of the peremptory challenges to which he was entitled under California law, his failure to timely object precludes our consideration of whether automatic reversal would apply to his conviction. Because Vansickel procedurally defaulted his federal constitutional claim in state court, he is required to establish cause and prejudice to excuse his state court default. He has not done so.

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting:

The majority acknowledges that the trial court's erroneous denial of half of Vansickel's

---

4. This analysis is similar to the prejudice analysis applied by the California Appellate Court. The appellate court applied the "miscarriage of justice" standard and concluded that it was not reasonably probable that Vansickel would have

received a more favorable result if there had been no error. In light of the entire record and the overwhelming evidence against Vansickel, the error did not result in a miscarriage of justice.

statutorily authorized peremptory challenges—ten out of twenty—violated his right to due process. The majority further acknowledges that our cases hold that, because it is impossible to determine whether an error that affects the composition of a jury had an actual effect on a jury's verdict, the erroneous denial of even one peremptory challenge requires a presumption of prejudice and automatic reversal of a criminal conviction. Finally, the majority appears to agree that the rule requiring the presumption of prejudice applies in habeas cases as well as on direct appeal. However, the majority then holds that because Vansickel's counsel failed to object during the empanelment of the jury, Vansickel procedurally defaulted his claim and therefore must, unlike the ordinary habeas petitioner, demonstrate actual prejudice as to the outcome of his case. Without explaining how Vansickel or any other litigant could possibly make such a showing, the majority simply overrides our well established rule that prejudice as to the result need not, indeed cannot, be shown in jury composition cases. By doing so, it renders it virtually impossible for any defendant to vindicate his right to due process if his attorney has committed a procedural default in such a case. In rejecting our common sense rule, the majority commits a serious error. Its imposition of an insurmountable barrier to the vindication of a right to due process is incompatible with the Constitution. *See Penson v. Ohio,* 488 U.S. 75, 86, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (prejudice must be presumed because otherwise right to appellate counsel would be eviscerated); *Michel v. Louisiana,* 350 U.S. 91, 94–95, 76 S.Ct. 158, 100 L.Ed. 83 (1955) (court will not apply procedural bar rule that "raises an insuperable barrier" to vindication of a constitutional right).

Because the majority glosses over the reasons courts have adopted the automatic reversal rule in jury composition cases, I briefly outline them here. This circuit has held that the remedy for improper denial of peremptory challenges is automatic reversal, because "it would be virtually impossible to determine whether the denial of a peremptory challenge was harmless." *United States v. Annigoni,* 96 F.3d 1132, 1144 (9th Cir. 1996) (en banc).[1] *Annigoni* reasoned that because the very purpose of peremptory challenges is to allow dismissal of potential jurors for subjective, unidentifiable reasons, and because the effect of a change in jury composition on jury deliberations cannot be determined, evaluation of the effect of this type of error is impractical and impossible. *Id.* at 1144–45. Therefore, impairment of the right to exercise statutorily authorized peremptory challenges requires no case-specific demonstration of actual prejudice. *Id.* at 1144–45, 1147. In *Martinez–Salazar,* we took this analysis one step further, holding that the improper denial of even one peremptory challenge violates due process and requires automatic reversal, whether or not an objectionable juror actually served on the jury. *See United States v. Martinez–Salazar,* 146 F.3d 653, 658–59 (9th Cir.1998).

Instead of being required to demonstrate an effect on his verdict, Vansickel should, under our precedent, be required to establish only "that his state counsel would have challenged another juror or jurors had he been aware of the remaining challenges." *Hines v. Enomoto,* 658 F.2d 667, 674 (9th Cir.1981). This showing would establish that his right was *actually impaired* by demonstrating that he would have used additional peremptory challenges if provided the opportunity.[2]

1. Our court's application of a rule of automatic reversal is in accord with the conclusion of other circuits to consider this question. *See United States v. Underwood,* 122 F.3d 389, 392 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2341, 141 L.Ed.2d 713 (1998) (automatic reversal appropriate when due process violated by impairment of intelligent exercise of peremptory challenges); *United States v. Taylor,* 92 F.3d 1313, 1325 (2d Cir.1996), *cert. denied,* 117 S.Ct. 771 (1997) (impairment of right to exercise peremptory challenges requires reversal); *Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 162 (3d Cir.

1995) (automatic reversal proper remedy in civil case); *Knox v. Collins,* 928 F.2d 657, 661 (5th Cir.1991) (impairment of right to exercise peremptory challenges requires automatic reversal of state conviction); *United States v. Cambara,* 902 F.2d 144, 147–48 (1st Cir.1990) (denial of peremptory challenge to which statute entitles requires reversal).

2. A defendant may make such a showing by demonstrating that he used all of the peremptory challenges that were provided to him. *See Martinez–Salazar,* 146 F.3d at 658–59.

In this case, as the majority acknowledges, Vansickel's lawyer met that standard; he demonstrated to the trial court's satisfaction that he would have used additional peremptories had they been provided.

Here, although Vansickel did not receive the jury he was entitled to and was thereby deprived of his right to a fair trial, the majority nonetheless holds that in view of his counsel's procedural default our rules do not apply and that in order to establish prejudice Vansickel must prove that his counsel's error actually affected the outcome of the proceeding.[3] However, application of such an actual prejudice standard constitutes an impossibility for defendants. Moreover, it is not permissible to require application of that standard when the error is one that we have clearly stated is not susceptible of actual prejudice analysis. Because we have held that there is no way to ascertain the impact on the result of a trial, denial of due process *must* be presumed prejudicial. *See Riggins v. Nevada,* 504 U.S. 127, 137, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (presuming prejudice when "[e]fforts to prove or disprove actual prejudice from the record before us would be futile, and guesses whether the outcome of the trial might have been different . . . would be purely speculative").

The majority reaches its untenable position by arguing that the procedural default at issue here involves *Strickland* error and that *Strickland* precludes the use of the presumed prejudice rule. The majority is wrong. It misconceives the nature of the *Strickland* error rule. Contrary to the majority's assumption, the prejudice inquiry as articulated in *Strickland* is not limited solely to ascertaining the error's effect on the result of a trial—rather, "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. Requiring a showing of prejudice that we know to be impossible certainly cannot help the courts evaluate whether a trial was fundamentally unfair.

---

**3.** Vansickel makes a strong argument that the state's rule should not be treated as a procedural bar. California case law entitles a defendant who has objected to an improper denial of a jury challenge to automatic reversal, but otherwise requires a demonstration of prejudice. *See People v. Caro,* 46 Cal.3d 1035, 251 Cal.Rptr. 757, 761 P.2d 680, 686–87 (Cal.1988). Although the district court characterized this "prejudice" requirement as a procedural bar, the rule actually operates to reverse the presumption of prejudice, not to waive review of the merits of the claim. In fact, the California courts have not termed this additional prejudice requirement a "procedural bar" or a "procedural default" rule. It appears that a defendant who fails to make a contemporaneous objection may still raise the statutory or constitutional claim, and the California courts will still consider the merits, as long as the defendant can demonstrate that he wanted to use additional challenges and was dissatisfied with the jury composition—in other words, that the error had some prejudicial effect on the rights of the defendant. *See Caro,* 46 Cal.3d at 1047, 251 Cal.Rptr. 757, 761 P.2d 680 (defendant cannot show prejudice when he made no objection and gave no indication of dissatisfaction with the jury); *People v. Crowe,* 8 Cal.3d 815, 106 Cal.Rptr. 369, 506 P.2d 193, 204–05 (1973) (no prejudice when defense attorney indicated satisfaction with jury). However, in Vansickel's case, the California court applied a different prejudice standard, one that required that the petitioner demonstrate that the denial of peremptory challenges affected the outcome of his trial. *Cf. People v. Johnson,* 6 Cal.4th 1, 23 Cal.Rptr.2d 593, 859 P.2d 673, 682 (1993) (barring any claim based on improper denial of peremptory challenge when defendant failed to object); *Buckley v. Chadwick,* 45 Cal.2d 183, 288 P.2d 12, 23 (1955) (applying miscarriage of justice standard when plaintiff improperly denied peremptory challenge). Unless a procedural bar rule is "strictly or regularly followed" by the state courts, a federal court should not apply it to foreclose review of a petitioner's claim. *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982) (quoting *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964)). Moreover, in this case, the state court considered the merits of Vansickel's claim, finding that his right to peremptory challenges was violated but that he could not demonstrate an effect on the jury's verdict. State court consideration of the merits of a defendant's claim means that there has been no procedural bar applied. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (if the last state court reaches the merits of a federal claim, there is no procedural bar). In this case, the state court considered Vansickel's claim and rejected it on the merits, concluding that he could not demonstrate prejudice. This weighs heavily against a finding of procedural default. *See McKenna v. McDaniel,* 65 F.3d 1483, 1488–89 (9th Cir.1995) (state court consideration of merits in applying rule allowing consideration of certain constitutional issues negates "independence" of state rule); *Brecheen v. Reynolds,* 41 F.3d 1343, 1354 (10th Cir.1994) (review of claim for fundamental error renders state rule not independent).

In fact, *Strickland* itself acknowledges that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. When the performance of counsel has been so egregious as to amount to a constructive denial of counsel, we presume prejudice. *See United States v. Cronic*, 466 U.S. 648, 659–60 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (when counsel "fails to subject prosecution's case to meaningful adversarial testing," or counsel has been absent at critical stage, prejudice is presumed); *Lozada v. Deeds*, 498 U.S. 430, 432, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (presuming prejudice when counsel failed to file notice of appeal); *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir.1991) (presuming prejudice when counsel conceded that there was no reasonable doubt as to elements of crime). Similarly, when counsel is burdened by an actual conflict of interest, a defendant need only demonstrate that this conflict had an adverse effect on counsel's performance, not on the outcome of the trial, since "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. *See Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."). Finally, when employing *Strickland*'s prejudice standard would effectively eviscerate the right, the Court presumes prejudice. *See Penson*, 488 U.S. at 86, 109 S.Ct. 346 (presuming prejudice when defendant was not represented on appeal because "[f]inding harmless error or a lack of

*Strickland* prejudice in cases such as this . . . would leave indigent criminal appellants without any of the protections afforded by *Anders*.").

When it is not possible or practical to analyze prejudice on a case-by-case basis and a presumption of prejudice is required in order to protect an important substantive right, the *Strickland* prejudice inquiry necessitates application of the presumed prejudice rule. The Eighth Circuit recently held that when a counsel's performance has led to an error that is "not amenable to harmless error analysis, but require[s] automatic reversal," prejudice must also be presumed for purposes of the *Strickland* analysis. *See McGurk v. Stenberg*, 1998 WL 850128 at *3–4 (8th Cir. 1998). Other courts have reached similar conclusions when counsel's error has affected the jury trial mechanism. *See, e.g., Government of Virgin Islands v. Weatherwax*, 20 F.3d 572, 579–80 (3d Cir.1994) ("Prejudice should not be presumed; but when juror misconduct is coupled with the trial court's failure to hold a voir dire to determine the outcome of the misconduct on the jury function, proof of actual prejudice is excused and a new trial is warranted."); *Hollis v. Davis*, 941 F.2d 1471, 1483 (11th Cir. 1991) (presumption of *Strickland* prejudice is warranted when attorney's error resulted in all-white jury, race was at issue in case, and trial transcript was not available for review); *Smith v. Gearinger*, 888 F.2d 1334, 1338–39 (11th Cir.1989) (presuming partiality of juror in accord with state law for purposes of *Strickland* inquiry).[4]

The impracticability of attempting to analyze the effect of jury composition error

---

4. However, courts are not in agreement on this issue. In a case decided almost simultaneously with its decision in *McGurk*, indeed only six days earlier, the Eighth Circuit reached a contrary result. In *Young v. Bowersox*, 161 F.3d 1159, 1998 WL 834365 (8th Cir. Dec.4, 1998), the court held that a defendant whose lawyer failed to object to racially discriminatory peremptory challenges was required to demonstrate a reasonable probability that the result of his trial would have been different if counsel had raised the objection. *Id.* at *2. Neither the *Young* court nor the opinion on which it relied, *Wright v. Nix*, 928 F.2d 270, 273 (8th Cir.1991) (in dicta, stating that defendant must demonstrate actual effect on result when counsel failed to object to

discriminatory use of peremptory challenges), addressed or even acknowledged the practical question posed by its holding: how could a petitioner possibly make such a showing in a case involving jury composition error? The Eleventh Circuit has also required a defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had been competent, even in cases in which counsel's error affected the composition of the jury itself. *Jackson v. Herring*, 42 F.3d 1350, 1360–62 (11th Cir.1995) (attorney failed to raise *Swain* objection). It, too, failed to consider the critical question of how a defendant can make a showing of prejudice in such a case.

while excluding the rule of presumed prejudice is well-illustrated by the majority's approach in this case. The majority does not argue that the presence of the particular jurors that Vansickel would have dismissed had no effect on the jury's deliberations—because, of course, there is no way for the majority to *know* what role these jurors played. Instead, the majority solely emphasizes the "overwhelming" nature of the evidence of Vansickel's guilt. However, as the Supreme Court has made clear, analysis of the effect of an error on a particular trial cannot properly focus exclusively on the strength of the evidence against the defendant:

> [T]he question is, not were [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.... The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence.

*Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (citations omitted). *See also Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ("The inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."); *Brecht v. Abrahamson,* 507 U.S. 619, 642–43, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (Stevens, J., concurring) ("The habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place. *Kotteakos* is full of warnings to avoid that result."). The majority's disposition of Vansickel's claim rests exclusively on its assessment of the verdict that a constitutionally composed jury would have reached, in direct conflict with the Supreme Court's

admonitions to avoid such a hypothetical exercise.

The majority also suggests, without so holding, that Vansickel probably could not demonstrate cause for his default because his lawyer was not constitutionally ineffective. This is clearly wrong: defense counsel missed the most elementary statutory protection provided to defendants. He unknowingly forfeited half of Vansickel's guaranteed allotment of peremptory challenges, "one of the most important of the rights secured to the accused," *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894), due to his ignorance of this basic statutory protection. This error would not have been difficult for counsel to avoid. A mere reading of the basic peremptory challenge statute would have revealed that capital defendants were guaranteed twenty peremptory challenges. *See* Cal.Code Civ. Pr. § 231(a) (defendant charged with offense punishable by death or life imprisonment is entitled to twenty peremptory challenges). Counsel's failure to make even this minimal effort to protect such an important right constitutes deficient performance. *See, Morris v. California,* 966 F.2d 448, 454–55 (9th Cir.1991) (ignorance of law and failure to research legality of methamphetamine use was ineffective assistance); *Green v. United States,* 972 F.Supp. 917, 920 (E.D.Pa.1997) (failure to appeal improper denial of statutorily authorized peremptory challenge was ineffective).

By requiring Vansickel to demonstrate that the erroneous denial of half of his rightful allotment of peremptory challenges substantially influenced the outcome of his case, the majority has demanded an impossible showing and therefore erected an insurmountable barrier to vindication of an important constitutional right. Because rendering a constitutional right unenforceable is an unacceptable result, the presumption of prejudice that normally applies in a case in which a criminal defendant has been denied statutorily guaranteed peremptory challenges applies equally in the case of *Strickland* error. In jury composition cases, whatever the context, the impossibility of proof of prejudice is identical. By concluding otherwise, and

abandoning *Hines*, the majority erred. I therefore dissent.