**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO J. ESPINOSA,
    *Plaintiff-Appellant,*

v.

UNITED STUDENT AID FUNDS, INC.,
    *Defendant-Appellee.*

No. 06-16421

D.C. No.
CV-04-00447-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
April 16, 2008—San Francisco, California

Filed June 24, 2008

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and N. Randy Smith, Circuit Judges.

Per Curiam Opinion

**COUNSEL**

Michael J. Meehan, Munger Chadwick, Tucson, Arizona; James L. Robinson, Jr., Robinson & Rylander, P.C., Tucson, Arizona, for the plaintiff-appellant.

Madeleine C. Wanslee, Gust Rosenfeld P.L.C., Phoenix, Arizona, for the defendant-appellee.

## OPINION

PER CURIAM:

Espinosa obtained $13,250.00 in student loans from United Student Aid Funds, Inc. (Funds). He later filed a Chapter 13 bankruptcy petition and plan. The plan provided that he repay the $13,250.00 principal, and that accrued capitalized interest, penalties, and fees be discharged. The clerk of the bankruptcy court mailed a notice of commencement and a copy of the proposed plan to Funds, which gave Funds the usual notice of the date and time of the plan confirmation hearing and the deadline for filing objections to the plan. Funds then filed a proof of claim for $17,832.15, which presumably included unpaid accrued capitalized interest, penalties, and fees. But Funds filed no objections to the plan, and as there were no other creditors, the bankruptcy court confirmed the plan as proposed. Espinosa subsequently paid Funds $13,250.00 over the course of four years, at which point the plan was completed and the bankruptcy court issued a discharge order, filed May 30, 1997. Curiously, the discharge order provided that Espinosa was "discharged from all debts provided for by the plan . . . except any debt . . . for a student loan," which contradicted the terms of the plan and pretty much rendered the whole exercise pointless from Espinosa's point of view. Curiouser still, Espinosa did not seek reconsideration of the discharge order, nor did he appeal.

Three years after the discharge order was filed, Funds began "offsetting" or "intercept[ing]" Espinosa's income tax refunds to satisfy the unpaid portion of the student loan. (The parties don't explain what they mean by "offsetting" and "intercept[ing]," but we assume they mean that Funds somehow

got ahold of Espinosa's income tax refund check, and kept the money for itself.) Espinosa petitioned the bankruptcy court for an order holding Funds in contempt for violating the discharge injunction. *See* 11 U.S.C. § 524(a)(2). Funds cross-moved for relief from the bankruptcy court's order confirming the plan, on the ground that the order had been entered in violation of Funds's rights under the Bankruptcy Code and Rules, and the Due Process Clause.

This is the nub of Funds's argument: To satisfy its obligations under the Bankruptcy Code, a Chapter 13 debtor usually only has to notify creditors by mail of the deadline for filing objections and when the confirmation hearing will occur, Fed. R. Bankr. P. 2002(b), as Espinosa did here. However, student loans may be discharged under Chapter 13, 11 U.S.C. § 1328(a)(2), only if the debtor can show "undue hardship," *id.* § 523(a)(8), and such a showing can only be made in an adversary proceeding, Fed. R. Bankr. P. 7001(6). To initiate an adversary proceeding, a debtor must file a complaint, *id.* 7003, which must be served on the creditor along with a summons, *id.* 7004. Espinosa didn't commence an adversary proceeding and therefore did not obtain a judicial declaration of "undue hardship." Absent such a declaration, Funds argues, the bankruptcy court lacked authority to discharge the student loan debt by means of the Chapter 13 plan. Funds's motion for relief from the discharge order was based on the fact that Espinosa obtained his discharge without following the statutorily-prescribed procedures for discharging student loan debt.

The bankruptcy court held that Funds violated the discharge injunction and ordered Funds to cease all collection activities against Espinosa. The court also denied Funds's motion for relief from the confirmed plan, holding that the plan became final when it was confirmed and that Funds should have objected to any procedural defect before confirmation. Funds appealed to the district court, which reversed. According to the district court, the order confirming the plan

is void because Funds received insufficient notice and was thus denied due process. Espinosa appeals.

Funds argues that the confirmed bankruptcy plan is void, because Funds didn't receive service of a complaint and summons and there was no adversary proceeding to establish "undue hardship," which the Bankruptcy Code and Rules require as a condition for discharging a student loan debt. We rejected this argument in *Pardee* v. *Great Lakes Higher Education Corp.* (*In re Pardee*), 193 F.3d 1083, 1086 (9th Cir. 1999). Like Funds, the creditor in *Pardee* received notice of the debtor's proposed Chapter 13 plan, which provided for discharge of the student loan debt without the benefit of an adversary proceeding or an undue hardship finding. *Id.* at 1084. The creditor did not object, the bankruptcy court confirmed the Chapter 13 plan and the student loan debt was eventually discharged. *Id.* Years later, the creditor argued that the confirmed plan wasn't final under 11 U.S.C. § 1327(a), because the debtor had failed to follow the proper procedures for obtaining a student loan discharge. *Pardee*, 193 F.3d at 1086. We pointed out in *Pardee* that the creditor there, like Funds here, had timely notice of the Chapter 13 plan and failed to object. We held that the creditor "should have raised this argument [about the absence of an adversary proceeding and a finding of undue hardship] in the bankruptcy court by objecting to the plan prior to its confirmation, or by appealing the bankruptcy court's confirmation of the plan. It failed to do either." *Id.*

Relying on the Tenth Circuit's opinion in *Andersen* v. *UNIPAC-NEBHELP* (*In re Andersen*), 179 F.3d 1253, 1258 (10th Cir. 1999), *overruled by Educ. Credit Mgmt. Corp.* v. *Mersmann* (*In re Mersmann*), 505 F.3d 1033, 1046-47 (10th Cir. 2007) (en banc), we held that "[i]f a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order, 'it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code.' " *Pardee*, 193 F.3d at

1086. In reaching this conclusion, *Pardee* also relied on a long line of cases, from our circuit and elsewhere, that "recognized the finality of confirmation orders even if the confirmed bankruptcy plan contains illegal provisions." *Id.*; *see, e.g.*, *Andersen*, 179 F.3d at 1258; *In re Szostek*, 886 F.2d 1405, 1409-10 (3d Cir. 1989); *Republic Supply Co.* v. *Shoaf*, 815 F.2d 1046, 1049-50 (5th Cir. 1987); *Lawrence Tractor Co.* v. *Gregory* (*In re Gregory*), 705 F.2d 1118, 1121 (9th Cir. 1983); *Ground Sys., Inc.* v. *Albert* (*In re Ground Sys., Inc.*), 213 B.R. 1016, 1020 (B.A.P. 9th Cir. 1997); *In re Walker*, 128 B.R. 465, 468 (Bankr. D. Idaho 1991).

Since *Pardee*, there have been significant developments in this area of the law: Two other circuits have rejected *Pardee*'s reasoning—significantly including the Tenth Circuit, which overruled its own *Andersen* opinion, on which *Pardee* principally relied. *Mersmann*, 505 F.3d at 1046-47; *Whelton* v. *Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 154 (2d Cir. 2005). Our own Bankruptcy Appellate Panel has questioned the reasoning of *Pardee*, albeit by a divided vote. *Educ. Credit Mgmt. Corp.* v. *Repp* (*In re Repp*), 307 B.R. 144, 148 n.3 (B.A.P. 9th Cir. 2004). And three circuits, as well as our Bankruptcy Appellate Panel, have held that the procedures employed here violate the creditor's due process rights. *Ruehle* v. *Educ. Credit Mgmt. Corp.* (*In re Ruehle*), 412 F.3d 679, 684 (6th Cir. 2005); *In re Hanson*, 397 F.3d 482, 486 (7th Cir. 2005); *Banks* v. *Sallie Mae Servicing Corp.* (*In re Banks*), 299 F.3d 296, 302 (4th Cir. 2002); *Repp*, 307 B.R. at 154.

It is thus fair to say that our position in *Pardee* is in the minority; indeed, among the circuits we now stand alone. Thus, while we (as a three-judge panel) are bound to follow *Pardee* as controlling circuit law, we must not blind ourselves to developments elsewhere. If we were persuaded that our position is erroneous, we would have the right, and perhaps even the duty, to bring the matter to the attention of our col-

leagues and suggest that an en banc court be convened to reconsider the matter afresh.

**[1]** We have therefore taken a look at the cases from the other circuits and do not immediately find them persuasive; the rationale of *Pardee* and *Andersen*, relying as it does on straightforward notions of notice and waiver, seem far more consistent with accepted principles concerning the finality of judgments that transcend this particular corner of the law. But we have no occasion to resolve this matter because, as previously noted, the discharge order in this case simply did not discharge Espinosa's student loan debt. Indeed, it specifically excluded the student loan debt from the discharge. *See* p.7295 *supra*. This order was, to be sure, inconsistent with Espinosa's Chapter 13 plan's terms; in effect, the bankruptcy court did not make good on its promise to the debtor that, if he satisfied the terms of the plan, it would discharge all of his listed debts.

Whether the bankruptcy court could have been held to that promise, and compelled to issue an order discharging the student debt, is an open question. Espinosa could have tested that proposition by asking the bankruptcy court to modify its order to discharge the student loan debt and, failing that, taken an appeal. But he did not. Rather, he allowed the bankruptcy court's discharge order to become final, and the time to appeal lapsed long ago. Nor did Espinosa seek to reopen the judgment by way of Federal Rule of Civil Procedure 60. *See* Fed. R. Bankr. P. 9024. Instead, Espinosa sought to enforce the discharge injunction against Funds. The obvious problem, of course, is that the discharge injunction simply does not run against Funds because the bankruptcy court's discharge order did not cover its debt. Funds was thus free to collect its debt, and the bankruptcy court seems to have misread its own order when it held otherwise.

**[2]** Much the same seems to have happened in *Mersmann*, 505 F.3d at 1039-40 & n.5, where the court found that "the clerk of the bankruptcy court automatically generates the dis-

charge orders and simply failed to tailor it [sic] to the facts of Mersmann's case." In *Mersmann*, the bankruptcy court corrected the discharge orders pursuant to Federal Rule of Civil Procedure 60(a). 505 F.3d at 1040. Here, Espinosa did not seek a correction of the order, and the bankruptcy court did not correct the order sua sponte, as it is permitted to do by Rule 60(a). It is possible that the bankruptcy court was unaware of the precise language of its discharge order, and was under the mis-impression that the order did cover the student loan debt; that seems to be the most plausible inference from its order enforcing the discharge injunction against Funds. And it is possible that neither party brought the precise language of the discharge order to the bankruptcy court's attention, as the parties said barely anything about it in their briefs before us.

**[3]** We therefore remand the case to the district court, with instructions for it to remand to the bankruptcy court. On remand, the bankruptcy court has our express leave to consider whether its discharge order in this case was entered as a result of a clerical error and, if so, whether to correct it so as to conform to Espinosa's Chapter 13 plan. *See Travelers Cas. and Surety Co.* v. *Pac. Gas and Elec. Co.*, No. 04-15605, 2008 WL 1970961, at *1 (9th Cir. May 8, 2008). The remand shall be for this limited purpose and no other, and shall last the earlier of 60 days or until such time as the bankruptcy court enters an order addressing this issue.

The parties shall notify us within 5 days of the entry of the bankruptcy court's order, and we shall determine at that time whether the case requires further briefing or can be resubmitted on the existing briefs and arguments.

**SUBMISSION VACATED; REMANDED FOR A LIMITED PURPOSE.**