**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SUNDEEP DHARNI,<br>*Defendant-Appellant*. | No. 11-16438<br><br>D.C. Nos.<br>2:10-CV-02934-EJG<br>2:05-CR-00306-EJG<br><br>ORDER |

Appeal from the United States District Court
for the Eastern District of California
Edward J. Garcia, District Judge, Presiding

Argued and Submitted
September 10, 2013—San Francisco, California

Filed July 2, 2014

Before: J. Clifford Wallace, Raymond C. Fisher, and
Marsha S. Berzon, Circuit Judges.

Order;
Dissent by Judge Wallace

# SUMMARY[*]

## Habeas Corpus

The panel granted a petition for panel rehearing, vacated its previous opinion, denied a petition for rehearing en banc as moot, and issued a limited remand in a case in which the defendant filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 based on the closure of the courtroom during voir dire and ineffective assistance of counsel.

The panel wrote that it did not decide the case with a full understanding of its procedural posture. The panel granted the defendant's petition for panel rehearing because the defendant suffered possible prejudice from the combination of the government's change in position and the misleading language of the panel's previous order granting the defendant's motion for bail pending appeal.

The panel remanded to the district court, given the contested nature of the facts and the paucity of the record. The panel instructed that the scope of the remand is limited to:  1) allowing the parties to supplement the record with evidence concerning the scope of the courtroom closure and 2) permitting the district court to make findings of fact on whether spectators had an opportunity to reenter the courtroom during voir dire, including whether seats in fact opened up and, if so, whether spectators would have been aware of the vacancies, and whether the district court and

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

court officials would have allowed the spectators to enter during voir dire.

Dissenting, Judge Wallace wrote that the original panel decision affirming the district court was correct, and did not prejudice the defendant. He wrote that the majority's order needlessly delays resolution of the defendant's habeas petition.

---

**ORDER**

Appellant Sundeep Dharni's petition for panel rehearing is GRANTED. The previous opinion, *United States v. Dharni*, 738 F.3d 1186 (9th Cir. 2014), is VACATED. The petition for rehearing en banc is DENIED AS MOOT.

**I.**

Our resolution of this case was premised on the conclusion that "the district court judge specifically authorized family members and spectators to reenter when seats were available." *Dharni*, 738 F.3d at 1189. It was on that understanding that we held that "the insufficient seating for spectators and family members for a limited period of time of uncertain duration did not violate Dharni's rights." *Id.* In his petition, Dharni explains that the government's position before the district court was actually that the closure *was* for the entire voir dire period, not only until seats opened up, and that the district court's decision rested on the same understanding. *See* Appellant's Pet. for Reh'g and for Reh'g En Banc, at 4–5, Feb. 14, 2014, ECF No. 48. The government does not contest those observations. *See*

Appellee's Br. in Opp'n to Appellant's Pet. for Reh'g and for Reh'g En Banc, at 10 n.1, Mar. 19, 2014, ECF No. 53. Because the government never asserted the premise on which we decided this case until the filing of its Answering Brief on appeal, Dharni did not rebut it by making a record before the district court regarding the scope of the courtroom closure. *See* 28 U.S.C. § 2255(b). Our opinion relied on the absence of such a record. *See Dharni*, 738 F.3d at 1189.

Dharni did not bring the government's switch of positions and its possible prejudice to Dharni to our attention until he filed this petition, because the misleading language of our previous order granting his motion for bail pending appeal under Federal Rule of Appellate Procedure 23(b) reasonably led him to believe that we had commanded him not to file a reply brief. *See* Order, Mar. 7, 2013, ECF No. 24. We therefore did not decide this case with a full understanding of its procedural posture. *See* Fed. R. App. P. 40(a)(2). Since Dharni suffered possible prejudice from the combination of the government's change in position and the misleading language of our previous order, we grant his petition for panel rehearing.

Given the contested nature of the facts in this case and the paucity of the record, we REMAND the matter to the district court. *See, e.g.*, *Howard v. Clark*, 608 F.3d 563, 565 (9th Cir. 2010). The scope of that remand shall be limited to: 1) allowing the parties to supplement the record with evidence concerning the scope of the courtroom closure and 2) permitting the district court to make findings of fact on whether spectators had an opportunity to reenter the courtroom during voir dire, including whether seats in fact opened up and, if so, whether spectators would have been aware of the vacancies, and whether the district court and

court officials would have allowed the spectators to enter during voir dire.

## II.

Although one might not realize it from reading the extensive dissent, we are deciding nothing more at this juncture than that a factual premise important to our original holding may not be accurate, and that we should find out whether it is. Assessing the potential triviality of a closure that spanned the entirety of voir dire would be a far different, and considerably more difficult, inquiry than the one we undertook in our now-vacated opinion, where we assumed a temporary closure. "Where 'the courtroom was totally closed to the general public at some critical juncture in the proceedings,'" we deem the closure "substantial," not trivial. *United States v. Rivera*, 682 F.3d 1224, 1231 (9th Cir. 2012) (quoting *Bruan v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000)). Because "[t]he process of juror selection is itself a matter of importance," *Press-Enter. Co. v. Superior Court of Calif., Riverside Cnty.*, 464 U.S. 501, 505 (1984), it is far from self-evident that the Sixth Amendment would tolerate closure of the entirety of voir dire.

The dissent's citations, *see* Dissent 19–20, certainly do not compel the conclusion that the Sixth Amendment tolerates closure of the entirety of voir dire. *United States v. Withers* did *not* assume that a judge had closed the entirety of voir dire upon ordering spectators to leave at the beginning of jury selection; it remanded for further factual development of the claim, as we do today. 638 F.3d 1055, 1064, 1068–69 (9th Cir. 2010). And the dissent's remaining citations are neither binding nor persuasive. *United States v. Santos*, 501 F. App'x 630 (9th Cir. 2012), is an unpublished

memorandum disposition, and so not precedential. *See* 9th Cir. R. 36–3(a). *Gibbons v. Savage*, 555 F.3d 112 (2d Cir. 2009), emanates from another circuit. And the closure there was *not* for the entirety of voir dire, as the dissent contends, but only for an afternoon, which was largely occupied by "private interviews of individual jurors as to their reasons for inability to serve . . . ." *Id.* at 121; *see also id.* at 114. "The next morning, *when voir dire resumed*, Gibbons's mother was allowed to watch the proceedings." *Id.* at 121 (emphasis added).

Moreover, although the dissent suggests otherwise, defendant's lack of opportunity to file a reply brief in this court was a matter brought to our attention only on rehearing. It is not at all unusual for appellants to fail to file reply briefs, which are optional, *see* Fed. R. App. P. 28(c), and so there was no reason to inquire into why that happened. And again, even if one member of the panel did realize that — which would have required reading with great care the briefing schedule contained in a collateral order, the order granting bail — the other two, understandably, did not.

Although Dharni *does* bear the burden of proof, *see Varghese v. Uribe*, 736 F.3d 817, 823 (9th Cir. 2013) (28 U.S.C. § 2254 petition), we cannot hold against him his failure to develop a record as to whether the closure was for the entire voir dire. Dharni so asserted throughout the district court § 2255 proceedings, without any objection from the government. The government thus acceded to Dharni's version of events before the district court, and directed its arguments accordingly. The dissent maintains that Dharni squandered his "opportunity to present precisely the type of evidence [we] say[] could vindicate his claim." Dissent 16. But, as a practical matter, Dharni had no reason to retread

common ground by proving a factual point the government itself accepted.[1]

Beyond those points, we have no reason to engage with the dissent at this juncture. We may find out after the limited remand that our original factual premise was true, in which case we could simply reinstate our previous opinion and, as we did in that opinion, decline to address as unnecessary to our result the various questions concerning the impact on habeas corpus of structural errors.

By declining unnecessarily to address questions not presently before us, we do not, of course, mean to signal any agreement with the dissent's analysis. We caution that the analysis should be regarded for precedential purposes as exactly what it is — a dissent, to which only one judge on a three-judge panel ascribes.

## III.

We VACATE submission of this case, and retain jurisdiction over this appeal pending the district court's disposition of this limited remand. The parties shall notify the court within seven days of entry of the district court's order. We shall determine at that time whether the case requires supplemental briefing or can be resubmitted on the

---

[1] The government's Opposition to Dharni's motion assumed that the public had been excluded. It did not challenge the factual predicate of Dharni's claim, which it described as "the [district] court excluded [Dharni's] family members from the court during jury selection." The government described the district court's removal of the public from the courtroom as an "exclusion order," and later stated that "[t]he exclusion of family members from jury selection did not affect the composition of the record or require inquiries about matters placed into evidence."

existing briefs and arguments. *See, e.g.*, *Espinosa v. United Student Aid Funds, Inc.*, 530 F.3d 895, 899 (9th Cir. 2008) (per curiam); *Eyak Native Village v. Daley*, 375 F.3d 1218, 1219 (9th Cir. 2004) (en banc) (order).

Petition for panel rehearing **GRANTED**; previous opinion **VACATED**; petition for rehearing en banc **DENIED AS MOOT**; **SUBMISSION VACATED**; **REMANDED FOR A LIMITED PURPOSE**.

---

WALLACE, Circuit Judge, dissenting:

I dissent from the majority's order granting the petition for panel rehearing, vacating our panel decision, vacating submission, and remanding to the district court. Our original panel decision was correct, and did not prejudice Dharni in any way. The majority's erroneous order needlessly delays resolution of Dharni's habeas petition, seven years after Dharni's criminal trial and conviction.

I conclude that the majority's order is incorrect for two reasons. First, even though the government did not specifically argue before the district court in its opposition to Dharni's habeas petition about the extent of the courtroom closure during voir dire, Dharni had the opportunity to make a record regarding the scope of the closure. Indeed, he did argue before the district court that the closure was for the entirety of voir dire, although he provided no record evidence to support that contention. Second, the government did not switch its legal position, but consistently argued the only legally relevant point: that the courtroom closure was trivial.

Additionally, although the issue may not yet be properly before this court, any remand should be unnecessary. Even if the courtroom closure was not trivial and violated Dharni's Sixth Amendment rights, we should deny Dharni's petition because he has not claimed, much less established, that he was actually prejudiced by the closure. This correct statement of law is currently subject to intracircuit dispute. If the district court on remand finds that the closure was for the entirety of voir dire, that spectators had no opportunity to reenter the courtroom, and ultimately that the closure was not trivial, we could only grant Dharni habeas relief subsequent to an en banc decision resolving the dispute.

## I.

To understand the majority's errors, a full discussion of the procedural posture of this case is necessary. Before voir dire began in Dharni's criminal trial for violations of 18 U.S.C. §§ 844 and 1341, in early July 2007, the district court judge stated he "anticipate[d] some problem because of the 4th of July holiday and possible hardship excuses." Accordingly, he expanded the number of prospective jurors. On the morning the trial began, the judge stated that when

> the jury comes up, I'm going to ask all family members to go out in the hall. We need every seat in the audience section of the courtroom as we called in extra jurors because of the vacation problem. So that during jury selection, all of the family and friends of the defendant and any other spectators that are out there will wait out in the hall during jury selection *until seats open up* [emphasis added].

Dharni's lawyer did not object to this statement. A few moments later, the judge asked "the family of the defendant and other spectators [to] please leave the courtroom." After the spectators had presumably left, the judge welcomed the prospective jury and stated that he "called in extra jurors today for jury selection," and that the courtroom did not "have much audience room."

During jury selection, the judge excused five potential jurors based on peremptory challenges, and then took a fifteen-minute recess. When selection reconvened, another nine potential jurors were excused because of challenges. In total, fourteen potential jurors were excused before the jury and the two alternates were empanelled. At no point during selection did Dharni's attorney object to any absence of the family members or other spectators.

Dharni was convicted. He appealed the conviction to this court, contending that the district court improperly admitted evidence, limited cross-examination, and imposed an improper sentence. We affirmed his conviction. *United States v. Dharni*, 324 F. App'x 554 (9th Cir. 2009).

On October 29, 2010, about a year and a half after our affirmance, Dharni filed a pro se petition for habeas relief under 28 U.S.C. § 2255. Dharni claimed three relevant errors in his habeas petition, for the first time. He argued he was denied his right to a public trial because of the courtroom closure, that his trial counsel committed ineffective assistance of counsel by failing to object to the closure, and that his appellate counsel was ineffective for failing to raise the courtroom closure on direct appeal.

According to Dharni's petition, the closure of the courtroom during voir dire violated his Sixth Amendment rights. Dharni argued that he did not need to show that the closure prejudiced his case at trial, because unjustified closures of the courtroom are "structural errors." He argued that such "structural errors" are per se prejudicial. He specifically stated that had his appellate attorney raised the issue on direct appeal "there is an absolute degree of certainty . . . that Petitioner would have prevailed in having his conviction over turned [sic] or issued a new trial." Dharni offered no evidence that he was prejudiced by the courtroom closure.

In response to Dharni's petition, the government argued that he had waived his right of review of the courtroom closure by failing to object to the closure at trial, or to raise it on direct appeal. The government argued that this waiver could not be overcome based on allegedly ineffective assistance of counsel, because Dharni's lawyers had not acted objectively unreasonably or caused him actual prejudice, and that courtroom closures are not structural errors requiring automatic reversal. The government argued that the "exclusion of the public during questioning of jurors . . . [was] so trivial as to not implicate the defendant's Sixth Amendment rights." Finally, the government argued that the Supreme Court's decision applying the Sixth Amendment right to a public trial to voir dire, *Presley v. Georgia*, 558 U.S. 209 (2010), was not retroactive before 2010 and therefore could not disturb Dharni's conviction.

In reply, Dharni argued he had not waived his right of review regarding the closure by failing to object or raise the issue on appeal, because the error was structural and thus automatically reviewable based on ineffective assistance of

counsel, regardless of whether Dharni showed that his lawyers' failures to object or raise the closure had prejudiced him. Dharni argued that *Presley* did apply to his criminal trial because the Supreme Court specifically stated that its holding was "well settled" under its prior precedent. Finally, Dharni argued that the courtroom closure was not trivial. Dharni offered evidence about the size of the courtroom where his trial took place, and repeatedly argued that the judge's request that spectators leave the courtroom in his case "involved a total closure," subject to a "more rigorous" review before exclusion.

The district court denied Dharni's habeas petition. The court held that as of Dharni's trial date, "it was an open question if the Sixth Amendment right to a public trial extended to jury selection and voir dire." Regardless, the court determined that the request that spectators, including family members, leave the courtroom temporarily was at most a trivial closure that did not implicate the Sixth Amendment values behind the right to a public trial. Because any closure of the courtroom during jury selection was trivial, the court concluded, Dharni suffered no prejudice from his counsel's failure to object or appeal, which doomed his ineffective assistance of counsel claim.

Dharni appealed to this court. A motions panel granted a certificate of appealability for two issues: "(1) whether the trial court's exclusion of appellant's family and all other spectators during voir dire violated his Sixth Amendment right to a public trial, including whether appellant has procedurally defaulted this claim; and (2) whether appellant's counsel rendered ineffective assistance by failing to raise this Sixth Amendment challenge at trial or on direct appeal." In that order, the motions panel also appointed Dharni counsel

to assist him in his appeal, and established the following briefing schedule: "[t]he opening brief is due October 31, 2012; the answering brief is due November 30, 2012; the optional reply brief is due within 14 days after service of the answering brief."

After an extension, Dharni filed his opening brief on November 15, 2012. Dharni argued once again that the courtroom closure violated his Sixth Amendment rights, that courtroom closures are structural errors meriting automatic reversal, and that he presumptively suffered prejudice from the closure.

On February 7, 2013, three months after Dharni filed his opening brief, Dharni moved for bail pending appeal. The government opposed the grant of bail on February 20, 2013, and Dharni replied on February 27, 2013. On February 27, 2013, the government submitted its answering brief to Dharni's merits appeal.

On March 7, 2013, a motions panel, composed of different judges than those who heard the certificate of appealability, granted Dharni's motion for bail pending appeal. That motions panel stated that Dharni had shown that he was not likely to flee or pose a danger to anyone's safety, and that he had "a high probability of success such that this is an extraordinary case." In its order, the motions panel stated that "[u]pon the filing of the [government's] answering brief [submitted the week before], principal briefing will be completed."

In the government's answering brief on the merits, submitted February 27, 2013 and filed by this court on March 7, 2013, the government argued that "[t]he record

demonstrates that it was not the court's intention to close the courtroom during the entirety of voir dire," and more broadly that the courtroom closure was trivial. The government also argued that courtroom closures are not structural errors meriting automatic reversal, and that Dharni had never shown that he was prejudiced by either the courtroom closure or his trial and appellate counsels' failure to object or raise the closure. Dharni did not file any reply brief on the merits.

We affirmed the district court's denial of Dharni's petition. *United States v. Dharni*, 738 F.3d 1186 (9th Cir. 2014). We held that the courtroom closure was trivial, because it did not infringe upon the values behind the Sixth Amendment right to a public trial. *Id.* at 1189. We held that because the district judge "specifically stated that spectators should 'wait out in the hall during jury selection *until seats open up*, [s]pectators were therefore free to reenter the courtroom to observe the voir dire as jurors were excused," and that "[f]ive spectators could have reentered the courtroom for the remainder of voir dire after the [court's] recess." *Id.* (emphasis added). We further stated that "Dharni has offered no evidence, nor have we found any evidence in the record, that court personnel *prevented* the spectators from reentering the courtroom." *Id.* We continued that because "the district court judge specifically authorized family members and spectators to reenter when seats were available, the insufficient seating for spectators and family members for a limited period of time of uncertain duration did not violate Dharni's rights." *Id.* Because the closure was trivial, we also rejected Dharni's claims of ineffective assistance of counsel. *Id.* at 1189–90.

Now Dharni petitions for panel rehearing and en banc review, asserting that the government did not argue before the

district court that the judge intended for family members to return to the courtroom on their own as they observed prospective jurors leaving. According to Dharni, this argument was raised for the first time on appeal before us in the government's answering brief, and therefore was forfeited.

The majority agrees. According to the majority, because of the "government's switch of positions," Dharni never had the opportunity to develop facts that showed the courtroom closure "*was* for the entire voir dire period, not only until seats opened up." Majority Order at 3–4. The majority asserts that Dharni could not point out the government's allegedly different positions because of "misleading language" in our previous order regarding his motion for bail pending appeal. *Id.* at 4. Thus, according to the majority, we must remand this case to the district court to determine the scope of the courtroom closure, and whether spectators were aware and had an actual opportunity to reenter the courtroom during voir dire. *Id.* at 4–15.

As an initial matter, I agree with the majority that the language the motions panel used in its order granting Dharni bail was misleading and improper. It is standard practice for our court to include language instructing the appellant that the optional reply brief is due within 14 days after the filing of the answering brief. The motions panel failed to include that language, stating instead that "[u]pon the filing of the [government's] answering brief [submitted the week before], principal briefing will be completed." That was misleading, and could reasonably be read to preclude the filing of any reply brief.

But I nonetheless dissent. Dharni already had an opportunity to present precisely the type of evidence the majority says could vindicate his claim, and he failed to do so. The government has not switched its relevant legal position, so we can still affirm the district court's denial of the habeas petition. Additionally, under a correct understanding of the law of procedural default, we do not need to remand this case, because even if Dharni could show that the closure was not trivial, he has not claimed that the closure prejudiced him.

II.

According to the majority, it vacates and remands our panel decision for "nothing more . . . than that a factual premise important to our original holding may not be accurate." Majority Order at 5. But Dharni bore the burden of proof in this action for habeas relief. *Varghese v. Uribe*, 736 F.3d 817, 823 (9th Cir. 2013). Dharni knew he should have submitted evidence about the scope of the courtroom closure and whether spectators had an opportunity to reenter the courtroom during voir dire, including whether seats opened up and whether court personnel would have allowed the spectators to reenter, the precise evidence the majority seeks on remand. Majority Order at 4–5. The motions panel's erroneous suggestion that briefing was completed with the filing of the government's answering brief had nothing to do with Dharni's earlier failure before the district court to submit sufficient evidence to support his argument that the closure was not trivial.

The government argued in its opposition to Dharni's habeas petition before the district court that the courtroom closure was trivial. We and our sister circuits have held that

closures are trivial based on a number of considerations. Some of those considerations include the size of the courtroom and whether the district court had specifically authorized spectators to return to available seating, *United States v. Shyrock*, 342 F.3d 948, 974–75 (9th Cir. 2003) ("[s]pecifically, the district court always allowed Appellants' family members and the general public to use the available seating"), and whether court personnel prevented spectators from returning. *Owens v. United States*, 483 F.3d 48, 61 (1st Cir. 2007) ("[t]wo members of Owens family [sic] submitted affidavits stating that uniformed officers prevented [family members] from entering the courtroom during the first day of jury selection in Owens' trial").

Thus, when Dharni filed his reply brief before the district court, he knew and had the opportunity to submit evidence about the size of the courtroom and whether court personnel prevented spectators from entering the courtroom. He brought as much evidence as he could about the size of the courtroom, attaching two drawings of the courtroom to his reply brief. He does not seem to have offered any evidence that court personnel prevented spectators from returning. Nor did he present any evidence that the district court's specific authorization that spectators could reenter when seats opened up was misunderstood to mean that spectators could not reenter when seats opened up.

Dharni knew from our case law that the evidence the majority seeks on remand was critical to his claim that the closure was not trivial. Indeed, he actually provided argument, though not evidence, in his reply brief about the scope of the courtroom closure, arguing that the closure was "complete." He also cited the First Circuit's decision in *Owens*, which stated that whether spectators were prevented

from returning to the courtroom is an important factor in determining that the closure was not trivial. His failure to convince the district court that the closure in his case was not trivial is not the result of the "government's switch of positions." Majority Order at 4. That failure stems from Dharni's own inability to provide sufficient evidence about the closure. If the majority disagrees with the district court's conclusion that the closure was trivial, it should so hold on the basis of the evidence Dharni has already submitted. Instead, the majority needlessly gives Dharni another bite of the apple. The evidence Dharni *failed to submit* about the size of the courtroom and whether court personnel prevented spectators from entering the courtroom was not "common ground" that "the government itself accepted." Majority Order at 6–7.

There is no reason to remand this case. Dharni could have submitted evidence about triviality, and about the precise issues on which the majority remands. His failure to do so before the district court means he suffered no prejudice from the motions panel's misleading suggestion regarding his reply brief.

Further, the majority states that it "did not decide this case with a full understanding of its procedural posture." Majority Order at 4, *citing* Fed. R. App. P. 40(a)(2). I admit that I am confused by this statement. The entire procedural posture of this case, described above, was available when we issued our opinion, either through our court's electronic database and other resources, or through a careful reading of the excerpts of record. I, for one, did decide this case with a full understanding of the procedural posture, and did not "overlook[] or misapprehend[]" any point of law or fact. Fed. R. App. P. 40(a)(2).

III.

The majority errs in remanding this case for another reason. The majority is technically correct that the government presented a slightly different argument in its appellate brief from its argument before the district court. Before that court, the government did not argue that the district court judge intended for spectators to be able to return to the courtroom once seats opened. That means that the government did not argue before the district court that closure was "partial" rather than "total." Before us, the government argued that "[t]he record demonstrates that it was not the court's intention to close the courtroom during the entirety of voir dire," suggesting that the courtroom closure may have been partial, rather than for the entirety of voir dire.

However, this "shift" is irrelevant. The legal question we reviewed was not whether the court intended to close the courtroom for all of the hearing. The legal question we reviewed was whether the closure was trivial. A closure can be "total" but still trivial. *See, e.g.*, *United States v. Withers*, 638 F.3d 1055, 1063–64 (9th Cir. 2010) (a district court violates a defendant's right to a public trial when "it totally closes the courtroom to the public, *for a non-trivial duration*," and holding that when the judge stated "all you people out there are going to have to be out of the courtroom" for the entirety of voir dire, the closure may still be trivial) (emphasis added)[1]; *United States v. Santos*, 501 F. App'x

---

[1] The majority misinterprets *Withers* in its discussion. Majority Order at 5. According to the majority, "it is far from self-evident that the Sixth Amendment would tolerate closure of the entirety of voir dire." *Id.* at 5 But that is precisely what we countenanced in *Withers*. Our legal analysis there was that "[a] district court violates a defendant's right to a public

630, 633 (9th Cir. 2012) (a closure for all of voir dire because of the size of the courtroom was still trivial); *Gibbons v. Savage*, 555 F.3d 112, 121 (2d Cir. 2009) (a closure for the entirety of voir dire was still trivial).

The government has never changed its position that the closure was trivial. It argued that the closure was trivial before the district court. Likewise, it argued that the closure was trivial in its appellate brief. Because the government has consistently made the same dispositive legal argument, it has not meaningfully shifted its position. We could consider the government's slightly different argument that the district judge did not intend for the courtroom to be closed through the entirety of voir dire, despite its not being raised in opposition to Dharni's habeas petition in the district court, because the broader legal argument of triviality is properly before us. *See, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law"); *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (in a habeas case, explaining that "parties are not limited to the precise arguments they made below," and can make "new arguments on appeal if they are intertwined with the validity of the claim," which means that "we may consider new legal

---

trial when it totally closes the courtroom to the public, for a non-trivial duration, without first complying with the four requirements" from the Supreme Court's precedents. 638 F.3d at 1063. In other words, when a district court "totally closes the courtroom to the public" without complying with the Supreme Court's requirements, the closure does not violate the Sixth Amendment so long as it is for a trivial duration. Thus, some "total" closures can still be trivial.

arguments raised by the parties relating to claims previously raised in the litigation").

Our now-vacated panel decision was not limited to the question of whether the closure was partial or total. Instead, we affirmed the district court because we concluded that the closure was trivial. We decided *as a matter of law* that the district judge's statement to the spectators was not a closure of the courtroom for the entirety of voir dire. That legal conclusion was one factor, along with the size of the courtroom, the lack of evidence that spectators were prevented from reentering the courtroom, and the uncertain duration of the closure, to affirm the district court's conclusion that the closure was trivial.

Because the government always argued that the closure was trivial, it was free to make "new arguments on appeal [because] they [were] intertwined with the validity of the claim." *Runnels*, 705 F.3d at 1098. The government argued that the district court's intention was not to close the courtroom during the entirety of voir dire. We agreed with that position. *Dharni*, 738 F.3d at 1189.

The majority tries to recontextualize our *legal holdings* about the words the judge used as *factual findings*, subject to further development of facts. Majority Order at 4–5 ("[t]he scope of that remand shall be limited to . . . permitting the district court to make findings of fact on whether spectators had an opportunity to reenter the courtroom during voir dire").

But that is incorrect. The panel's understanding that spectators could return during voir dire did not need to be based on facts in the record, but was based on our *legal*

interpretation of the actual words the district judge used, when he stated that "family and friends of the defendant and any other spectators that are out there will wait out in the hall during jury selection until seats open up." Indeed, Dharni admits this in his petition for rehearing, arguing that the panel's "reading" – *i.e.* our legal interpretation – "of the district court closure order is unreasonable and unfair to appellant and his family."

The majority also cites Dharni's explanation that "the district court's decision rested on the same understanding" that the courtroom was closed for all of voir dire. Majority Order at 3. But of course, the panel legally interpreted the words the judge used. We reverse "understandings" and legal decisions of district courts all the time.

The government has never switched its broader legal theory about the courtroom closure. It has consistently argued that the closure was trivial. The panel agreed with that, in part because of our decision on the narrower legal question, argued only by the government on appeal, that the closure was temporary. The panel was free to consider this narrower legal argument, and no further facts could disturb that conclusion.

IV.

Thus, I dissent, because I conclude our panel decision was correctly decided and the motions panel's order did not prejudice Dharni. But even if the closure of the courtroom was not trivial, and even if it violated the Sixth Amendment, Dharni did not object to the closure at trial or on appeal, and has never argued that he suffered any prejudice from the closure. Thus, assuming a courtroom closure is a "structural

error" subject to automatic reversal of conviction, Dharni procedurally defaulted the claim, and has not shown the "cause" and "actual prejudice" needed to overcome the default. *See, e.g.*, *Vansickel v. White*, 166 F.3d 953 (9th Cir. 1999).

Our statement of the law in *Vansickel*, which is consistent with that of the Second, Fifth, Eighth, Tenth and Eleventh Circuits, has been confused by *United States v. Withers*, 638 F.3d 1055 (9th Cir. 2010). Whether habeas petitioners must show they suffered actual prejudice from a structural error if they procedurally defaulted the error is now the subject of intracircuit conflict. If the district court were to find that the closure was not trivial and violated the Sixth Amendment, only our court en banc, not a three-judge panel, could resolve the conflict before granting relief to Dharni. I believe that our decision in *Vansickel* and the comparable decisions of our sister circuits are correct. Under *Vansickel*, Dharni's failure to plead that he suffered actual prejudice from the courtroom closure means we should affirm the denial of Dharni's habeas petition even if the closure was not trivial.

A.

Dharni did not object to the courtroom closure or raise the issue on direct appeal. A federal court can thus only offer him relief under section 2255 if he shows both "cause" excusing this procedural default and "actual prejudice" from the errors of which he complains. *United States v. Frady*, 456 U.S. 152, 167–68 (1982). Dharni has not affirmatively pleaded that he suffered any prejudice. Instead, he argues that because the courtroom closure was a "structural error," which affects the framework of the trial itself, prejudice must be presumed. As

Dharni explains, his trial and appellate attorneys must have acted ineffectively, because had they raised the courtroom closure either at trial or on direct appeal, he would have merited automatic reversal of conviction. Thus, he argues that his attorneys' failures to raise the issue caused him the actual prejudice of not having his conviction reversed.

## B.

Assuming that a courtroom closure during voir dire is a structural error, Dharni argues that he is entitled to relief despite his procedural default, because he presumptively suffered prejudice from his attorneys' failure to object at trial or raise the closure on direct appeal. But whether we presume prejudice for structural errors is subject to decisions where we have come to opposite conclusions. *Compare Vansickel v. White*, 166 F.3d 953 (9th Cir. 1999) *with United States v. Withers*, 638 F.3d 1055, 1065–66 (9th Cir. 2010). Most of our sister circuits have rejected the reasoning of *Withers*.

### 1.

In *Withers*, the panel considered a habeas petition based on the closure of the courtroom during voir dire, where the petitioner had not objected to the closure at trial or on appeal. According to the panel, even though Withers had not shown he was actually prejudiced by the closure, had his counsel on direct appeal raised the argument, he "would have been entitled to automatic reversal of his conviction and a new trial had he established a violation." *Id.* at 1065. His attorney's failure to raise the closure on appeal by definition constituted "cause" and "actual prejudice." *Id.* at 1065–66. The panel also held there was a credible claim that Withers' trial counsel's performance presumptively constituted "cause" and

"actual prejudice" because his failure to object resulted in a structural error. *Id.* at 1066–68.

These conclusions were contradictory to our prior decision of *Vansickel*. In that case, a state court "erroneously denied [the defendant] his full allotment of peremptory challenges," a mistake that at the time "require[d] automatic reversal." 166 F.3d at 955, 959, c*iting United States v. Annigoni*, 96 F.3d 1132 (9th Cir. 1996), *overruled by Rivera v. Illinois*, 556 U.S. 148 (2009), *as recognized by United States v. Lindsey*, 634 F.3d 541, 544 (9th Cir. 2011). But the defendant did not object to the state court's error during voir dire. *Id.* at 955 ("defense counsel failed to make a contemporaneous objection to the loss of peremptory challenges"). The federal district court rejected the defendant's habeas petition. *Id.* at 956. We affirmed, because the defendant had not established that he had suffered actual prejudice. Critically, we distinguished prior cases including *Annigoni* where we reversed convictions because of erroneous denials of peremptory challenges. We held that those reversals were in "direct federal appeal cases in which the defendants timely objected in the district court to erroneous limitation of their peremptory challenges." *Id.* at 959. In other words, although the defendant complained of what we then considered a structural error,[2] we required that

---

[2] We did not use the phrase "structural error," but referred to "erroneous denial of a peremptory challenge" as requiring "automatic reversal." *Vansickel*, 166 F.3d at 959. That followed our understanding in *Annigoni* that some trial errors are "not amenable to harmless-error analysis," but do not necessarily "rise[] to the level of structural error." 96 F.3d at 1144. That understanding, that some errors require "automatic reversal" but are not "structural errors," is not consistent with later Supreme Court decisions. *Neder v. United States*, 527 U.S. 1, 7 (1999) (stating that "[f]or

he affirmatively "establish prejudice," and refused to hold that he was entitled to a presumption of prejudice. *Id.*

We suggested two distinctions between *Vansickel* and *Annigoni* and its progeny. *Annigoni* and the other cases were (1) "direct federal appeal cases," where (2) "the defendants timely objected in the district court to erroneous limitation of their peremptory challenges." *Id.* The first distinction, that the underlying conviction was a state proceeding rather than a federal proceeding, could not have been the basis for our holding, because the same "cause" and "actual prejudice" requirements apply to petitions seeking relief from state and federal convictions, and did so at the time *Vansickel* was decided. *Frady*, 456 U.S. at 167 (citing two cases involving underlying state convictions to determine the standard for review of federal convictions). The only proper distinction between *Vansickel* and *Annigoni* then was that the defendant in *Annigoni* contemporaneously objected to the denial of peremptory challenges. In other words, we held that because the defendant in *Vansickel* failed to object to the structural error at trial, he was not entitled to a presumption of prejudice.

Judge Reinhardt's dissent clearly outlined the majority's holding. He argued that he believed it would be impossible for the defendant to show prejudice, and stated his belief that "the presumption of prejudice applies in habeas cases as well as on direct appeal." *Vansickel*, 166 F.3d at 960 (Reinhardt, J., dissenting). Judge Reinhardt continued that even if a party normally would need to demonstrate prejudice after procedural default, "[w]hen the performance of counsel has

---

all other constitutional errors [besides structural errors], reviewing courts must apply Rule 52(a)'s harmless-error analysis").

been so egregious as to amount to a constructive denial of counsel [by failing to object to an error that merits automatic reversal], we presume prejudice." *Id.* at 962.

The panel's reasoning from *Withers*, without even recognizing *Vansickel*, followed the dissent from the earlier case rather than the majority holding. The *Withers* panel held that a petitioner did not need to show prejudice when he did not object to a structural error at trial or even raise the error on appeal. *Withers*, 638 F.3d at 1065–67. Of course, the panel was not free to ignore a majority holding of this court in favor of a dissent. I believe that the two decisions are irreconcilable. *Accord* Amy Knight Burns, Note, *Insurmountable Obstacles: Structural Errors, Procedural Default, and Ineffective Assistance*, 64 STAN. L. REV. 727, 758 (2012) ("[t]hough an earlier Ninth Circuit case [*Vansickel*] required a showing of actual prejudice, *Withers*, the most recent case in the Circuit, declares it an open question without citing the earlier case"). The only way to resolve such a conflict, which must be resolved if we are to grant Dharni habeas relief, is through en banc review. *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) ("the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision") (citation omitted).

## 2.

Most of our sister circuits follow *Vansickel* and refuse to reverse convictions automatically on direct or habeas review based on unpreserved structural errors, instead requiring that the defendant actually demonstrate how he was prejudiced. *United States v. Gomez*, 705 F.3d 68, 74–76 (2d Cir. 2013) (a courtroom closure was a structural error, but nonetheless the

court refused to reverse because the defendant did not show that the error "affected the fairness, integrity, or public reputation of judicial proceedings"); *Charboneau v. United States*, 702 F.3d 1132, 1138 & n.3 (8th Cir. 2013) (subjecting an unpreserved challenge to a structural error to plain error review and affirming the conviction); *United States v. Turietta*, 696 F.3d 972, 976 n.9 (10th Cir. 2012) ("Turietta's claim of a 'structural' error has little bearing on the application of the plain error test," and refusing to reverse the conviction under plain error review); *United States v. Phipps*, 319 F.3d 177, 189 n.14 (5th Cir. 2003) (an unchallenged structural error is subject to plain error review and affirming the conviction despite the error); *see also Purvis v. Crosby*, 451 F.3d 734, 743 (11th Cir. 2006) ("prejudice may not be presumed but must be shown in order to establish ineffective assistance of counsel based on the failure to raise a claim of structural error at trial"); *but see Owens v. United States*, 483 F.3d 48 (1st Cir. 2007).

## C.

The majority now remands this case to the district court for fact-finding, which may lead the district court to find that the closure here was not trivial. If the closure was not trivial, though, Dharni is still not entitled to habeas relief under *Vansickel*, because he has not demonstrated that he suffered prejudice from the courtroom closure, but rather argued that we must presume he has suffered such prejudice. If the closure in Dharni's trial is found to be not trivial, this court en banc must consider his appeal to resolve the dispute between *Vansickel* and *Withers*.

## V.

The majority is wrong. Dharni was not prejudiced by the government's alleged switch in positions. The government did not switch its positions as a matter of law. Finally, if on remand the district court decides that the closure here was not trivial, our court en banc must hear this appeal to resolve the irreconcilable conflict in our case law. Without such review, Dharni cannot receive relief even if the closure violated his Sixth Amendment rights (which it did not), because he procedurally defaulted the claim and has not shown that he suffered prejudice from the closure.