**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    18-50405 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00728-RGK-1 |
| v. | |
| ANGEL FLORES, AKA Angelberto Flores Cervantes, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 3, 2020
Pasadena, California

Before:  HURWITZ and FRIEDLAND, Circuit Judges, and KORMAN,[**] District Judge.

Angel Flores was convicted of being a felon in possession in violation of 18 U.S.C. § 922(g)(1) after ammunition was found during an investigatory stop in a car he was driving.  On appeal, Flores challenges the district court's denial of his motion

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

to suppress the evidence found in the search of that car and statements made to the police as a result of the stop.

We hold that the police lacked reasonable suspicion to stop the car and that the evidence obtained as a result of the search should have been suppressed. *See United States v. Colin*, 314 F.3d 439, 446-47 (9th Cir. 2002); *see also United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc) ("It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures."). We therefore reverse the district court's denial of the motion to suppress, vacate Flores's conviction, and remand for further proceedings.

Flores's car was stopped about twenty minutes after Los Angeles police received several 911 calls reporting that gunshots had been heard at around 2:10 a.m. in the San Pedro neighborhood. One caller, a security guard, stated during a call made at 2:25 a.m. that, about ten to fifteen minutes earlier, he had heard three or four gunshots coming from the direction of Mesa Street and 6th Street. After hearing the gunshots, the security guard got in his car to leave the area and saw a "newer" gray Chevrolet Camaro or Dodge Challenger with tinted windows "speeding" down the street. The guard said that the gray car followed him until he reached the on-ramp to the Harbor Freeway. Shortly after the security guard's call, a police helicopter spotted Flores's car, a gray Camaro, half a mile to a mile away from the locations in

2

which shots had been reported and approximately 1.6 miles from the Harbor Freeway entrance. Patrol officers promptly stopped the car, and the search at issue ensued after Flores told the officers there was a weapon in his car.

"The Fourth Amendment permits investigatory stops if the facts known to the officers established 'reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Magallon-Lopez*, 817 F.3d 671, 674 (9th Cir. 2016) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000) (citation omitted). The government contends that the following factors justified the investigatory stop: (1) Flores's car was a gray Chevrolet Camaro, consistent with the two makes and models the security guard identified as driving away from the direction in which the security guard had heard the gunfire; (2) Flores's car was stopped approximately 20 minutes after the shootings were first reported and approximately half a mile from one area of reported gun fire; and (3) the stop occurred at around 2:30 a.m., a time when relatively fewer cars are on the road than during daylight hours. We assume that the security guard's 911 call was reliable but find that these facts do not suffice to create "a particularized and objective basis for suspecting" Flores "of criminal activity." *Navarette v.*

3

*California*, 572 U.S. 393, 396-97 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Although Flores's car fit the general description given by the security guard, the government offered no evidence that gray Camaros or Challengers are unusual in the area where the stop was made, that Flores's car was the only car matching this description in the area, that Flores's car matched any of the more specific identifying features mentioned by the security guard (tinted windows, a newer model), or that there was anything otherwise suspicious about how or where it was driving when stopped. *See United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975) ("Driving a car as common as a Ford LTD is not suspicious."). The car was half a mile away from the closest area in which gunshots had been reported, approximately 20 minutes after the gunshots were first reported, and heading in the opposite direction of the car identified by the security guard. *See United States v. Manzo-Jurado*, 457 F.3d 928, 938 (9th Cir. 2006) (in determining whether there was reasonable suspicion, courts must take in "both factors weighing for and against reasonable suspicion").

There are even fewer facts connecting the passengers of the gray car with the shooter.[1] None of the four 911 callers saw a shooter get into a car; in fact, one of

---

[1] Although some of the 911 callers offered descriptions of the race, age range, sex, and number of the suspected shooters, the government conceded on appeal that

them identified seeing the shooter flee on foot. And, the security guard who identified the gray Camaro or Challenger merely stated that he saw the car speed away from the area shortly after gunshots were fired. Speeding away from an area where gunshots were heard would surely be the "rational reaction" of an innocent bystander; indeed, it is apparently the very action that the security guard took. *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1122 (9th Cir. 2002) (noting that "driving behavior" can "not be relied upon to justify reasonable suspicion" of an unrelated offense if it would "place motorists in a damned if you do, equally damned if you don't situation" (internal quotation markets and citation omitted)); *see also Manzo-Jurado*, 457 F.3d at 935 ("Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity."). Because the totality of these factors does not establish "a particularized and objective basis for suspecting" Flores of involvement in the shooting, his motion to suppress should have been granted. *Navarette*, 572 U.S. at 396-97 (citation omitted).[2]

---

these factors "cannot be counted in the reasonable-suspicion calculus because [the] officers were unaware that defendant and his passenger matched some of those descriptions until after officers stopped defendant's gray Chevrolet Camaro." *See Magallon-Lopez*, 817 F.3d at 675 ("[T]he facts justifying the stop must be known to officers at the time of the stop.").

[2]    The government has not requested a remand to further develop the factual record and we decline sua sponte to order that unusual relief. And, because the

**REVERSED IN PART, VACATED and REMANDED.**

---

government has not suggested that additional facts exist that would support the challenged seizure, we decline to speculate about what they might be.

FILED

APR 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KORMAN, District Judge, dissenting:

I begin with an overview of key relevant facts. Shortly after 2 a.m. on October 15, 2017, the LAPD received a series of four 911 calls reporting shots fired in the San Pedro neighborhood. The most significant call came from a security guard, who provided his telephone number, and who told the 911 operator that between 2:10 and 2:15, he was on foot, patrolling outside 407 West 7th Street, when he heard four shots coming from the direction of Mesa Street and 6th Street. He tried to get back into the building, but the door was locked. The guard had gotten in his car, which was parked nearby, when he heard tires screeching and saw what he believed to be a newer Gray Camaro or Challenger with tinted windows quickly turning the corner, going "60 down a pedestrian street." Significantly, he told the 911 operator that he thought the shooter was in car, and that it "trailed [him] til [he] got on the Harbor Freeway."

Approximately 20 minutes later, a LAPD helicopter unit, who had been informed by the dispatcher that the suspect might be driving a gray Camaro, spotted a gray Camaro traveling "at a high rate of speed" at 18th and Mesa—roughly half a mile from 6th and Mesa, where the security guard said he heard gunshots coming from—and directed two patrol officers to stop the car.

1

The majority concedes the reliability of the 911 calls, as it must. *See Navarette v. California*, 572 U.S. 393, 397-98 (2014). Nonetheless, it holds the LAPD police "lacked reasonable suspicion to stop [Flores's] car and that the evidence obtained as a result of the search should have been suppressed." Because I believe the balance of the evidence in this case tips in favor of a finding of reasonable suspicion, I am unable to join in the majority's holding.

In my view, the facts of this case compel the conclusion that there was reasonable suspicion. The Supreme Court has held that reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A "preponderance of the evidence" is synonymous with the "more likely than not" standard necessary for a plaintiff to prevail in a civil case. *See Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 329 (2007); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983). Thus, reasonable suspicion could have been established even it was just as likely (or even more likely), based on the information known to the police at the time, that the gray Camaro stopped by the LAPD was *not* the shooter's car.

Against this backdrop, I turn to the specific defects in the evidence that the majority relies on in support of its holding. The majority suggests there was insufficient evidence that Flores's car was the same car described by the security guard. Next, the majority argues there was an insufficient nexus between the car

2

described by the security guard and the suspected criminal activity. Because I disagree on both points, I respectfully dissent.

First, the majority argues that "the security guard who identified the gray Camaro or Challenger merely stated that he saw the car speed away from the area shortly after gunshots were fired," and that, "[s]peeding away from an area where gunshots were heard would surely be the 'rational reaction' of an innocent bystander; indeed, it is apparently the very action that the security guard took." This analysis of the record understates the information the security guard provided. Specifically, he said that the car came careening around the corner from the direction of the gunshots at approximately 60 miles per hour, and that in his on-the-scene judgment, the shooter was in the car. In the face of these details, the willingness of the majority to conjure such an innocent explanation cannot be reconciled with the basic principle that reasonable suspicion "need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. 266, 277 (2002). Nor can it be reconciled with the common sense that undergirds the reasonable suspicion standard. *See Kansas v. Glover*, 589 U.S. ___ (2020) at 4; *Sokolow*, 490 U.S. at 8.

Second, the majority argues that the time and space separating the security guard's account from the siting of Flores's Camaro, and the direction it was traveling, undermines reasonable suspicion. I disagree. The fact that Flores, when stopped, was traveling in the opposite direction of the car described by the security

3

guard, cannot undermine reasonable suspicion. After all, in the 20 minutes that elapsed after the security guard reported seeing the gray Camaro, and before the officers stopped Flores, there was more than enough time for Flores to have turned around from the Harbor Freeway entrance—a mile away from where the security guard reported gunshots—and drive closer to the scene of the suspected shooting. Indeed, when spotted by the LAPD helicopter, Flores was not just driving a gray Camaro, but was also driving it at "a high rate of speed," consistent with the security guard's account. This undermines the majority's assertion that there was nothing "otherwise suspicious about how or where it was driving when stopped."

Under these circumstances, the alleged gaps in the record do not undermine the inference that Flores's car was the shooter's car for purposes of our reasonable suspicion analysis. But even if they did, we should not reverse a conviction of a defendant who was inarguably a felon in possession of a weapon without remanding the case to develop the record while we retain jurisdiction of the appeal. Indeed, we have done so in a number of criminal cases involving collateral issues unrelated to the guilt or innocence, and particularly in cases like this, where the district court did not thoroughly address the facts at issue. *See, e.g., United States v. Angle*, 761 F. App'x 775, 777 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 90 (2019); *United States v. Dharni*, 757 F.3d 1002 (9th Cir. 2014); *United States v. Ahrndt*, 475 F. App'x 656, 658 (9th Cir. 2012). *Cf. United States v. Wright*, 625 F.3d 583, 604 (9th Cir. 2010)

4

("remand for factual findings is required where it is impossible to determine the basis for the district court's denial of a motion to suppress.").

Perhaps the most apposite case is *Ahrndt*, a search-and-seizure case where, sua sponte, we remanded for further fact-finding to resolve questions the panel considered "beneficial in determining whether Ahrndt had a reasonable expectation of privacy in his computer files," 475 F. App'x at 658, an issue as to which he had the burden of proof. *See Rakas v. Illinois*, 439 U.S. 128, 132 (1978). In *Arhndt*, the panel outlined the specific factual issues the district court was ordered to resolve on remand, while the panel retained jurisdiction of the appeal. I see no reason to grant Flores the windfall of a remedy unrelated to his guilt or innocence, especially given his own barebones suppression motion below, which made no mention of the evidentiary gaps discussed above.

I respectfully dissent.